UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

DR. ASHU GARG,                                )
                                              )
                    Plaintiff,                )
                                              )
v.                                            )
                                              )
VHS ACQUISITION SUBSIDIARY NO. 7 d/b/a        )        C.A. No. 4:20-cv-40060-DHH
SAINT VINCENT HOSPITAL, DAVID BADER,          )
JOHN MUKAI, and DOUGLAS BURD,                 )
                                              )
                    Defendants.               )
                                              )
_____      )

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## THEIR MOTION TO DISMISS AND COMPEL ARBITRATION

### Introduction

Plaintiff Ashu Garg, M.D. ("Dr. Garg") brings this action against Defendants VHS

Acquisition Subsidiary No. 7, Inc. d/b/a Saint Vincent Hospital ("SVH"), David A. Bader, M.D.,

F.A.C.R. ("Dr. Bader"), John K. Mukai, M.D. ("Dr. Mukai"), and Douglas A. Burd, M.D. ("Dr.

Burd")[1] in connection with his termination as a medical resident in SVH's Radiology Residency

Program. Specifically, Dr. Garg alleges that Defendants discriminated against him during his

residency program because of his age and retaliated against him for raising concerns of age

discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and M.G.L.

c. 151B ("Chapter 151B"), breached their contract with him and the covenant of good faith and

fair dealing implied in that contract, and tortiously interfered with his ability to complete his

---

[1] Drs. Bader, Mukai, and Burd are collectively referred to herein as the "Individual Defendants." SVH and the Individual Defendants are collectively referred to as "Defendants."

residency by terminating his employment, which he alleges had the effect of rendering him ineligible to take an exam necessary to complete his residency and begin a fellowship.

However, Dr. Garg's claims are not properly before this Court. In connection with his employment with SVH, Dr. Garg entered into an arbitration agreement with SVH that requires him to submit claims to arbitration that, like the claims in this action, arise from or relate to his employment or termination. While the Individual Defendants did not sign that agreement, they are entitled to enforce it on two independent grounds. First, Dr. Garg is estopped from contesting arbitration of the claims against the Individual Defendants because he has asserted his claims against SVH and the Individual Defendants indiscriminately. Second, all of Dr. Garg's claims against the Individual Defendants arise from their alleged actions and omissions as purported agents of SVH, entitling them to compel arbitration under traditional agency principles. Thus, all of Dr. Garg's claims in this action are arbitrable.

Because all of Dr. Garg's claims are subject to arbitration, there is no reason for this Court to retain jurisdiction over this case. Therefore, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), Defendants respectfully request that the Court dismiss Dr. Garg's claims and compel arbitration.

## Relevant Background[2]

### I. Dr. Garg Accepts a Position with SVH and Agrees to Arbitration.

On or about August 2, 2016, Dr. Garg accepted SVH's offer of a position in its radiology residency program. *See* ECF Doc. 1 ¶ 15; *see also* ECF Doc. 1-1. As part of the onboarding process, on or about September 8, 2016, Dr. Garg electronically signed a Handbook and Fair

---

[2] For purposes of this motion alone, the facts alleged in the Verified Complaint are accepted as true.

Treatment Process Acknowledgement (the "Acknowledgement"). *See* Declaration of Mary Walker ("Walker Dec.") ¶¶ 5-6 & Ex. A thereto.

The Fair Treatment Process ("FTP") provides "a comprehensive mechanism for resolving employment-related disputes between the Company and its employees." *See id.*, Ex. B ¶ III. It is a "multiple-step process that ultimately provides for final and binding arbitration of such disputes if they are not resolved in any of the pervious steps in the process." *See id.* The FTP binds both SVH and its employees, and it requires them to arbitrate "all disputes relating to or arising out of an employee's employment with the Company or the termination of employment," including, but not limited to, "claims for wrongful termination of employment, breach of contract, employment discrimination, harassment or retaliation under . . . the [ADEA] . . . or any state or local discrimination laws, [and] tort claims." *See id.*, Ex. C ¶ IV(A).

By signing the Acknowledgement, Dr. Garg "acknowledge[d] that [he had] accessed and reviewed an electronic copy of the Handbook" and that he had "received an electronic copy of the . . . Fair Treatment Process." *See id.*, Ex. A. Moreover, Dr. Garg confirmed his agreement to arbitrate any employment-related claim against SVH when he signed the Acknowledgement, which clearly stated: "I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with [SVH]." *See id.*

## II.   Dr. Garg's Employment with SVH.

On or about September 12, 2016, Dr. Garg entered into a Residency Agreement with SVH and began working in SVH's Radiology Residency Program. *See* ECF Doc. 1 ¶¶ 17, 20. The Residency Agreement required Dr. Garg to abide by SVH's policies and procedures, *see* ECF Doc. 1-2 ¶ 4(c)(ii) & Ex. D thereto.  This included SVH's Graduate Medical Education

Generations of Excellence Policies and Procedures Manual ("GME Manual"), as well as its human resources policies, and the policies applicable to hospitals in the Tenet Healthcare system, such as the FTP Policy.  The GME Manual provides for a process that allowed residents to appeal disciplinary actions and decisions relating to advancement, nonrenewal and certification, the final step of which is arbitration. *See* Declaration of Barbara Buell ("Buell Dec."), Ex. B at 16.

During Dr. Garg's employment with SVH, he worked with the Program Director of the SVH Radiology Residency Program, Dr. Bader, and two faculty members of that Program, Drs. Burd and Mukai. *See* ECF Doc. 1 ¶¶ 3-5. On or about April 26, 2017, SVH sent Dr. Garg a letter, signed by Dr. Bader, offering to renew his Residency Agreement ("Renewal"). *See id.* ¶ 44; *see also* ECF Doc. 1-9. After SVH offered Dr. Garg the Renewal, Dr. Bader issued him a "written warning on or about May 3, 2017 for his alleged unsatisfactory performance." *See* ECF Doc. 1 ¶ 45; *see also* ECF Doc. 1-10. Less than two weeks later, Dr. Garg signed and accepted the Renewal. *See* ECF Doc. 1 ¶ 55; *see also* ECF Doc. 1-10.

### III.    SVH Terminates Dr. Garg's Employment.

On or about June 21, 2017, Dr. Bader, as well as another physician, "met with Dr. Garg and presented him with a termination letter that stated Dr. Garg failed to meet performance expectations." ECF Doc. 1 ¶ 60. Dr. Garg appealed his termination internally pursuant to the GME Manual, but SVH upheld its decision to terminate his employment in August 2017." *See id.* ¶¶ 69-77.

### IV.    Dr. Garg Submits Claims Against SVH to Arbitration.

On or about January 8, 2018, Dr. Garg, through counsel, initiated arbitration against SVH pursuant to the GME Manual by filing a Statement of Claim with the American Health Lawyers

Association (the "AHLA Arbitration"). Buell Dec. ¶¶ 3-4 & Ex. A thereto. In his Statement of

Claim, Dr. Garg contended that his termination from SVH's residency program was "wrongful,"

that his termination rendered him "unable to complete his residency and begin the fellowship he

was selected for," and that SVH "breached" an unspecified agreement, the Renewal, and the

"implied covenant of good faith and fair dealing." Buell Dec., Ex. A ¶¶ 28-31.

On or about March 20, 2018, Dr. Garg, again through counsel, agreed to arbitrate his

claims in the AHLA Arbitration "under the AHLA Rules of Procedure for Employment

Arbitration." *See* Buell Dec. ¶5 & Ex. C thereto. Afterward, SVH and Dr. Garg submitted

payments to the AHLA, selected an arbitrator, and participated in a scheduling conference with

the arbitrator. *See id.* ¶¶6-8 & Ex. D thereto. Thereafter, Dr. Garg decided to proceed *pro se* in

the AHLA arbitration. *See id.* ¶9. Then, on August 30, 2018, Dr. Garg sent an e-mail to the

arbitrator, representatives of the AHLA, and SVH's counsel in which he stated, "I wish to

withdraw from arbitration claim without prejudice." *See id.* ¶9 & Ex. E thereto. Thereafter, Dr.

Garg took no further action to pursue the case and the case was administratively closed.

**V.    Dr. Garg Commences this Action.**

On or about May 28, 2020, Dr. Garg commenced this action against SVH and the

Individual Defendants. *See* ECF Doc. 1. Much like his AHLA Statement of Claim, his Complaint

in this action alleges that "Defendants breached their written employment agreement with [him] .

. . [and] the implied covenant of good faith and fair dealing," and "tortuously [sic] interfered

with [his] contractual relations" when they terminated his residency, which rendered him unable

to take a test offered by the American Board of Radiology ("ABR") required to complete his

residency and begin a fellowship for which he was selected. *See* ECF Doc. 1 at 1 & ¶¶ 115-117,

120-123. Dr. Garg also contends that Defendants discriminated against him because of his age and retaliated against him in violation of the ADEA and Chapter 151B. *See id.* at 1 & ¶¶ 86-101.

**Argument**

Pursuant to the FAA, this Court should dismiss Dr. Garg's claims against Defendants in favor of arbitration. Through the FTP, Dr. Garg and SVH agreed that claims relating to or arising from Dr. Garg's employment with SVH or termination would be subject to arbitration. All of Dr. Garg's claims in this case arise from Dr. Garg's employment with SVH and/or are based expressly on SVH's decision to terminate his employment. In addition, although the Individual Defendants did not sign the arbitration agreement between SVH and Dr. Garg, Dr. Garg is estopped from avoiding arbitration with them because he has not distinguished them from SVH when alleging wrongdoing. Moreover, Dr. Garg alleges that the Individual Defendants are liable to him as agents of SVH, making the claims against the Individual Defendants arbitrable under the law of agency. Therefore, the Court should dismiss all of Dr. Garg's claims and compel him to submit them to arbitration pursuant to the FTP.

## I. The FTP Requires Dr. Garg to Arbitrate His Claims.

### A. The FAA Governs the FTP's Arbitration Provision.

The parties agreed that the FAA would "govern arbitrations under the FTP." *See* Walker Dec., Ex. B ¶ IV(B)(6). Accordingly, the FAA applies to this Motion. *See, e.g.*, *Doctor's Assocs., Inc. v. Rahimzadeh*, No. 3:17-CV-2126 (JCH), 2018 WL 1704757, at *3 (D. Conn. Apr. 9, 2018) (applying FAA to motion to compel arbitration where the parties' agreement provided that "the FAA would govern the arbitration provision"); *Prof'l Sports Tickets & Tours, Inc. v. Bridgeview Bank Grp.*, No. CIV. A. 01-991, 2001 WL 1090148, at *3 (E.D. Pa. Sept. 13, 2001) ("The [FAA]

governs the arbitration provision in the contract between the parties. Indeed, the Card Processing

Agreement expressly states that the FAA governs the arbitration between the parties.").

### B.  The FAA Requires Dr. Garg to Arbitrate His Claims Against SVH.

The FAA establishes a strong public policy in favor of arbitration. *See Preston v. Ferrer*,

552 U.S. 346, 352-53 (2008); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62

(1995). Indeed, the purpose of the FAA is to ensure that courts "rigorously enforce agreements to

arbitrate." *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). With these precepts

in mind, in deciding a motion to compel arbitration under the FAA, the Court's task is simply to

determine (a) whether the parties' agreement to arbitrate is valid and enforceable, and (b)

whether the claims at issue fall within the scope of that agreement. *See id.* at 218.  Both inquiries

are satisfied here.

In evaluating whether an arbitration agreement is valid and enforceable, courts "should

apply ordinary state law contract principles that govern the formation of contracts." *See First

Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, when doing so, "due

regard must be given to the federal policy favoring arbitration." *See Volt Info. Sciences, Inc. v.

Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

In Massachusetts, the elements of an enforceable agreement are "offer, acceptance, and

consideration." *Quinn v. State Ethics Comm'n*, 516 N.E.2d 124, 127 (Mass. 1987). Where, as

here, the parties entered into their agreement to arbitrate online, the party seeking to compel

arbitration must show that "(1) the arbitration provision was reasonably communicated to [the

other party], and (2) that [the other party] manifested assent to its terms." *See Bekele v. Lyft, Inc.*,

199 F. Supp. 3d 284, 295 (D. Mass. 2016), *aff'd on other grounds*, 918 F.3d 181 (1st Cir. 2019);

*see also Ajemian v. Yahoo!, Inc.*, 987 N.E.2d 604, 612 (Mass. 2013) (finding that party

attempting to enforce forum selection clause in Terms of Service distributed to other party online "had the burden of establishing, on undisputed facts, that the provisions of the [Terms of Service] were reasonably communicated and accepted"), *aff'd*, 84 N.E.3d 766 (Mass. 2017). The FTP's arbitration provision satisfies all of these elements.

First, SVH reasonably communicated (and offered) the arbitration provision of the FTP to Dr. Garg. During SVH's onboarding process, Dr. Garg was required to "click on a link that [took him] to a written description of . . . the [FTP]." *See* Walker Dec. ¶ 4. Indeed, before the onboarding system would allow him to electronically sign the Acknowledgement, he was required to "have first clicked on the lin[k] in the Acknowledgement to . . . the [FTP], gaining access to . . . [that] documen[t] to review." *See id.* And, the Acknowledgment itself confirmed that Dr. Garg agreed to the FTP's arbitration provision immediately above the space for his signature. *See id.*, Ex. B. Under similar circumstances, courts have found that an offeror reasonably communicated an arbitration provision to an offeree. *See Emmannuel v. Handy Techs., Inc.*, No. CV 15-12914-NMG, 2020 WL 978082, at *6 (D. Mass. Feb. 27, 2020) (finding reasonable communication of arbitration provision where offeror provided hyperlink to Terms of Use containing that provision to offeree, and offeror's "program code required [the offeree] to check a box indicating her acknowledgement of an agreement with the hyperlinked Terms of Use before allowing her to proceed to any subsequent screens in the application process"); *Bekele*, 199 F. Supp. 3d at 297 (finding that offeror's displaying its Terms of Service, which contained an arbitration provision, "in its entirety" on offeree's screen constituted reasonable notice). As a result, SVH reasonably communicated (and offered) its arbitration provision to Dr. Garg during the onboarding process.

Second, Dr. Garg accepted the FTP's arbitration provision. In order to sign the Acknowledgement, Dr. Garg was required to "click in the space of block for 'Employee Signature.'" *See* Walker Dec. ¶ 4. When he did so, the following language appeared:

> I understand that by electronically signing this document by typing my full name below, that I acknowledge, agree and attest that the information provided by me is true and correct and I am freely intending to create and adopt as my own a legally binding electronic signature that carries the same legal effect and enforceability as my hand written signature.

*See id.* After being informed of the legal effect of his electronic signature, Dr. Garg electronically signed the Acknowledgement immediately under a paragraph that reiterated his assent to the FTP's arbitration provision by typing his name in the "Employee Signature block." *See id.* ¶ 5; *see also id.*, Ex. B. Much less has been found by courts to constitute acceptance of an arbitration agreement communicated over the internet—namely, clicking an "I accept" button on a webpage. *See Bekele*, 199 F. Supp. 3d at 297-98. Accordingly, Dr. Garg accepted the FTP's arbitration provision, and the Court must give effect to his electronic acceptance of that provision. *See* 15 U.S.C. § 7001(a)(1) ("[A] signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form."); M.G.L. c. 110G, § 7(a) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.").

Finally, Dr. Garg's agreement to arbitrate employment-related claims is supported by his employment with SVH and SVH's agreement to do the same. *See* Walker Dec. ¶¶ 4-5 (noting that new hires are "required" to sign the Acknowledgement and cannot "complete the onboarding process without" doing so); *see also id.*, Exs. A-B. Thus, SVH provided sufficient consideration in exchange for Dr. Garg's agreement to arbitrate his employment-related claims. *See Daniels v. Raymours Furniture Co.*, No. CA 13-11551-MLW, 2014 WL 1338151, at *5 (D.

Mass. Mar. 31, 2014) (finding that arbitration program contained in employee handbook required plaintiff to arbitrate his discrimination claims where "[a]ll employees were required, as a term and condition of their continued employment, to access the updated [h]andbook, including the [a]rbitration [p]rogram, and certify that they had read it"); *Pazol v. Tough Mudder Inc.*, 103 N.E.3d 1237, 2018 WL 2090277 at *4 n.7 (Mass. App. 2018) (Rule 1:28 Decision) ("We also reject the plaintiffs' claim that the arbitration provision lacks mutual consideration. This is clearly not so. Each party waived its right to judicial process and gained the right to invoke arbitration."), *rev. den.*, 104 N.E.3d 665 (Mass. 2018).

### C.  The FTP Encompasses Dr. Garg's Claims.

In light of the federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The FTP broadly "covers all disputes relating to or arising out of an employee's employment with the Company or the termination of employment." *See* Walker Dec., Ex. B ¶ IV(A). There can be no doubt that all of Dr. Garg's claims arise from or relate to his employment or termination.

To begin with, Dr. Garg's claims for discrimination and retaliation under the ADEA and Chapter 151B (Counts I-II) unquestionably fall within the FTP's arbitration provision. As a preliminary matter, the FTP expressly provides that it applies to such discrimination and retaliation claims. *See id.*, Ex. B ¶ IV(A) (stating that arbitration provision applies to "claims for . . . discrimination . . . or retaliation under the . . . [ADEA] . . . or any state . . . discrimination laws"). Moreover, Dr. Garg's ADEA and Chapter 151B claims are based on conduct related to his employment—including alleged disparate treatment and retaliation for allegedly raising concerns of disparate treatment—and on the termination of his employment. *See* ECF Doc. 1 ¶¶

88-91, 96-99. Accordingly, Dr. Garg must submit those claims to arbitration. *See Barrasso v. Macy's Retail Holdings, Inc.*, No. 1:15-CV-13098-ADB, 2016 WL 1449567, at *9 (D. Mass. Apr. 12, 2016) (ordering arbitration of discrimination and retaliation claims under M.G.L. c. 151B where arbitration agreement expressly applied to "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state, or local decisional or statutory law"); *Joule, Inc. v. Simmons*, 944 N.E.2d 143, 149 (Mass. 2011) (recognizing arbitrability of "claims of employment discrimination," provided that the "agreement to arbitrate [such claims is] stated clearly and unmistakably").

Like Dr. Garg's discrimination and retaliation claims, his claims for breach of contract and breach of the implied covenant of good faith and fair dealing (Counts III-IV) also arise from his employment and the termination of his employment. Indeed, the FTP specifically includes claims for breach of contract in its non-exhaustive list of arbitrable claims. *See* Walker Dec., Ex. B ¶ IV(A). Further, those claims arise from Dr. Garg's Residency Agreement and Renewal, *see* ECF Doc. 1 ¶¶ 103-105, 108-110, and Paragraph 6 of the Residency Agreement (which remained in effect under the Renewal) expressly stated that the Residency Agreement "embodie[d] the complete, full and exclusive understanding of [SVH] and [Dr. Garg] with respect to [his] employment by the hospital." *See* ECF Doc. 1-2 ¶ 6(a); *see also* ECF Doc. 1-9 ¶ 4 ("All other terms and conditions stated in the [Residency] Agreement shall remain in effect throughout the Renewal Term."). Finally, Dr. Garg claims that SVH breached the Residency Agreement and the implied covenant of good faith and fair dealing "when it terminated [his] employment." *See* ECF Doc. 1 ¶¶ 104, 109. Under these circumstances, there can be no question that Dr. Garg's contract

and implied covenant claims relate to and arise from his employment and termination. Thus, the Court should dismiss Dr. Garg's contract-based claims in favor of arbitration.

Finally, Dr. Garg's claims for tortious interference (Counts V-VI) also unquestionably arise out of the termination of his employment with SVH. Specifically, Dr. Garg alleges that "Defendants knowingly interfered with [his] contract with the ABR [to take an exam required to complete his residency]" and his "contract [for a fellowship] with NYU Langone Medical Center, Manhattan" by **"wrongfully terminating his residency."** *See* ECF Doc. 1 ¶¶ 115, 121 (emphasis added).  For this reason, Dr. Garg's tortious interference claims are arbitrable. *See Zdeb v. Shearson Lehman Bros.*, 674 F. Supp. 812, 815 (D. Colo. 1987) (finding that allegation that defendant interfered with plaintiff's clients by "terminating the plaintiff's employment" was arbitrable as "arising out of" plaintiff's employment or the termination of that employment).[3]

### D.  The Individual Defendants Can Enforce the FTP's Arbitration Provision.

Under Massachusetts law, an individual who is not a party to an arbitration agreement can compel arbitration pursuant to the doctrines of equitable estoppel and agency. *See Tissera v. NRT New England*, --- F. Supp. 3d ---, 2020 WL 610023, at *5 (D. Mass. Feb. 10, 2020) (citing *Machado v. System4 LLC*, 28 N.E.3d 401, 408 (Mass. 2015)). Here, both doctrines require Dr. Garg to arbitrate his claims against the Individual Defendants.

---

[3] Dr. Garg's tortious interference claim relating to his alleged contract with the ABR (which is based, in part, on "SVH's notif[ying] ABR that Dr. Garg [was] no longer working in its residency program," *see* ECF Doc. 1 ¶ 81) is arbitrable for an additional reason—namely, it is based on communications concerning the termination of Dr. Garg's employment. *See Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 681 (3d Cir. 2000) (finding that defamation claim based on defendant's forwarding plaintiff's termination letter to state regulatory body was arbitrable because it was "based on a description of [the plaintiff's activities while employed" and thus arose out of employment and termination); *Powell v. Sparrow Hosp.*, No. 1:10-CV-206, 2010 WL 2901875, at *2 (W.D. Mich. July 23, 2010) (finding former resident's claims based on hospital's alleged "false statements" and "negative references" to prospective employers arbitrable because those communications were "of the sort that a hospital employer would foreseeably make after the conclusion of a doctor's residency program, and are inextricably intertwined with her prior employment").

First, under the doctrine of equitable estoppel, a non-signatory can compel arbitration "when a signatory," such as Dr. Garg, "raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the [arbitration agreement]." *See id.* (quoting *Machado*, 28 N.E.3d at 409). "In assessing whether a plaintiff has advanced sufficient allegations of concerted misconduct, courts frequently look to the face of the complaint." *Id.* (quoting *Machado*, 28 N.E.3d at 412). "Courts have routinely found that where plaintiffs fail to distinguish between defendants when asserting claims, they have effectively alleged 'interdependent and concerted misconduct.'" *Id.* (quoting *Machado*, 28 N.E.3d at 412). And that is exactly what Dr. Garg has done in this case.

In the first paragraph of Dr. Garg's Verified Complaint, he alleges that "Defendants" are liable on all of his claims:

- "Defendants . . . terminated [Dr. Garg's] employment after he complained of . . . disparate treatment." ECF Doc. 1, at 1.

- "Defendants' actions are in violation of the [ADEA] and Chapter 151B." *Id.*

- "Defendants also breached their written employment agreement with plaintiff, the implied covenant of good faith and fair dealing, and tortuously [sic] interfered with plaintiff's contractual relations." *Id.*

Additionally, Dr. Garg has asserted his claims for age discrimination (Counts I and II) and tortious interference (Counts V and VI) indiscriminately against all "Defendants." *See id.* ¶¶ 89-93, 97-101, 115-16, 118, 121-22, 124. Given these allegations, Dr. Garg is estopped from avoiding arbitration with the Individual Defendants. *See Tissera*, 2020 WL 610023, at *6 (finding that plaintiff was estopped from avoiding arbitration with non-signatory defendant where plaintiff alleged relevant counts of sexual harassment "against all Defendants in her

13

complaint" and asserted that "All Defendants" created a "hostile work environment"); *Machado*, 28 N.E.3d at 412 (finding that plaintiffs were estopped from avoiding arbitration with non-signatory defendant where they "lumped" the signatory and non-signatory defendants "together, asserting each claim in their complaint against [the defendants] collectively" and "charged both [defendants] with equal wrongs, failing to distinguish them throughout the evolution of [the] case").

Second, pursuant to agency principles, "[w]hen 'a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *See Tissera*, 2020 WL 610023, at *6 (quoting *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 11 (1st Cir. 2014)). For an agent to "benefit from his principal's arbitration clause . . . [,] the action [in] dispute [must have been] 'undertaken in the course of the [agency relationship].'" *See id.* (quoting *Grand Wireless*, 748 F.3d at 11). Here, Dr. Garg's allegations make clear that his claims against Dr. Bader arise from his actions as the "Director of SVH's Radiology Residency Program" and that his claims against Drs. Mukai and Burd arise from their actions as "faculty member[s] of SVH's Radiology Residency Program." *See* ECF Doc. 1 ¶¶ 3-5. Specifically, Dr. Garg alleges that:

- Dr. Bader counseled Dr. Garg on performance issues. *See* ECF Doc. 1 ¶ 25.

- Dr. Burd treated Dr. Garg "less favorably than . . . younger residents" by "unreasonabl[y] critici[zing] Dr. Garg's radiology readings." *See id.* ¶ 33.

- "Dr. Bader . . . unreasonably criticized Dr. Garg for inadvertently failing to sign one 'sign out form.'" *See id.* ¶ 38.

- "Dr. Mukai made an age-related comment toward Dr. Garg," ostensibly "during a conversation about [radiation] images." *See id.* ¶¶ 40-41.

- Dr. Bader issued Dr. Garg a written warning, evaluating Dr. Garg's performance on behalf of SVH. *See id.* ¶¶ 45-47.

- "Dr. Garg complained to Dr. Bader about Dr. Burd's disparate treatment." *See id.* ¶ 49.

- Dr. Bader, along with another physician, "met with Dr. Garg and presented him a termination letter that stated Dr. Garg failed to meet performance expectations." *See id.* ¶ 60.

Accordingly, Dr. Garg must arbitrate his claims against the Individual Defendants. *See Grand Wireless*, 748 F.3d at 10-13 (allowing non-signatory individual defendant to compel arbitration of claims against her where her "alleged actions were taken in her capacity as [her corporate defendant's] agent or employee," "while she was employed for the company," and "in furtherance of company business"); *Myrick v. GTE Main St. Inc.*, 73 F. Supp. 2d 94, 96 (D. Mass. 1999) (compelling arbitration of employee's sexual harassment claims against former supervisor "under traditional agency theory").

## II.   By Initiating The AHLA Arbitration, Dr. Garg Waived Any Objections He May Have Had To Arbitration Of His Claims.

A party who voluntarily initiates arbitration consents to the arbitration of the claims it asserted in that arbitration. *See Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) ("[Plaintiff's] voluntary initiation of arbitration can be interpreted as waiver of any objection he may have had over the authority of the arbitrator."); *cf. also Kiernan v. Piper Jaffray Companies, Inc.*, 137 F.3d 588, 594 (8th Cir. 1998) ("Appellants initiated the arbitration process in this case, and they cannot now argue, after receiving an unfavorable result, that the arbitration panel did not have the authority to decide the issues involved."). Here, Dr. Garg asserts the same common law claims against Defendants in this litigation that he asserted against SVH in the AHLA arbitration. *See* Buell Dec., Ex. A ¶¶ 28-31. Accordingly, he has consented to the arbitration of

those claims and has waived any objection to arbitration as the proper forum for resolving his claims. *See Nghiem*, 25 F.3d at 1440; *cf. also Kiernan*, 137 F.3d at 594.

**III.** **Dr. Garg's Expected Arguments Against Enforcing the FTP Are Meritless.**

Despite Dr. Garg's clear acceptance of the FTP's arbitration provision, Defendants expect that Dr. Garg will argue that the FTP was not sufficiently incorporated by reference in his Residency Agreement. That argument is a red herring. As demonstrated above, Dr. Garg unequivocally agreed to the FTP's arbitration provision in his Acknowledgement, so there is no need for this Court to determine whether it was incorporated by reference into his Residency Agreement. Even if Defendants contended that Dr. Garg's execution of the Residency Agreement was the manner by which he manifested his assent to the FTP's arbitration provision (which is not their contention), the Residency Agreement expressly provided that Dr. Garg was required to abide by SVH's policies (which included the FTP): "Resident Physicians shall abide by the Hospital policies, standards, rules, regulations, requirements and procedures. Policies and Procedure[s] are located in/on: . . . The Saint Vincent Hospital Human Resources/eTenet Policies [and] The Saint Vincent Hospital Intranet." *See* ECF Doc. 1-2 ¶ 4(c)(ii) & Ex. D thereto. Such language is sufficient to incorporate the terms of the FTP into the Residency Agreement. *See, e.g.*, *Greene v. Ablon*, 794 F.3d 133, 146 (1st Cir. 2015) (holding that employment application that stated, "I have received and had an opportunity to read the Bylaws of the Medical/Professional Staff. I specifically agree to abide by all such bylaws and any policies and procedures that are applicable to appointees to the Medical/Professional Staff," and appointment form that stated, "In discharging the duties and exercising the privileges of your appointment, you are required to . . . [a]bide by the Bylaws, rules, regulations, and policies of the Professional Staff and the Hospital," were sufficient to incorporate hospital's intellectual property policy);

*Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 43 (1st Cir. 2012) (holding that transfer agreement's statements that transferees "succeed[ed]" to rights, and "bec[a]me liable for . . . obligations," of transferor under franchise agreement were sufficient to incorporate franchise agreement's arbitration provision).

Additionally, Defendants anticipate that, as a last-ditch effort to avoid the consequences of agreeing to the FTP's arbitration procedure, Dr. Garg will argue that the FTP's arbitration provision is unconscionable because its mandatory arbitration procedure differed from the arbitration procedure provided by the GME Manual under which he commenced the AHLA Arbitration. That argument is factually baseless and legally meritless.

As a preliminary matter, the GME Manual expressly refers to the parties' "mutual agreement to arbitrate disputes relating to [Dr. Garg's] employment" (i.e., the FTP's arbitration provision). *See* Buell Dec., Ex. B at 17. As a result, the GME Manual expressly incorporated— and thus cannot be inconsistent with—the FTP's mandatory arbitration provision. Although "no . . . magic terms are required" to incorporate an arbitration clause from one document into another document, it is difficult to imagine a clearer incorporation by reference than the GME Manual's specific reference to the FTP's "mutual agreement to arbitrate." *See Awuah*, 703 F.3d at 43. Thus, the factual premise underlying Dr. Garg's likely unconscionability argument (namely, that the GME Manual's arbitration provisions differed from and were inconsistent with the FTP's arbitration procedure) is baseless, and his unconscionability argument crumbles as a result.

Even if Dr. Garg's unconscionability argument had a basis in fact (and to be clear, it does not), he cannot show that the FTP's arbitration provision is unconscionable as a matter of law. "Under Massachusetts law, '[t]o prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and

procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise).'" *See Machado*, 28 N.E.3d at 414 (quoting *Storie vs. Household Int'l, Inc.*, No. 03-40268, 2005 WL 3728718 (D. Mass. Sept. 22, 2005)). Dr. Garg cannot satisfy either of these requirements.

First, the FTP is not substantively unconscionable. On the contrary, it furthers the "purpose of submitting disputes to binding arbitration," which "is heavily favored by statute and case law." *See Miller v. Cotter*, 863 N.E.2d 537, 545 (Mass. 2007). It is also "bilateral in that either party could invoke its provisions" and preserves "[a]ll rights and remedies available in the courts." *Compare id.*, *with* Walker Dec., Ex. B ¶ IV(B)(6)(d) ("The arbitrator has authority to award any remedy that would have been available to the individual employee had the employee litigated his or her dispute in court under applicable law."). Accordingly, the FTP's arbitration provision is not substantively unconscionable, and it is valid and enforceable.

Second, assuming that the FTP were substantively unconscionable (which it isn't), it is not procedurally unconscionable because it was not "riddled with improprieties in its formation, [was] hidden or obscured in prolix form, or . . . otherwise ha[d] the potential for unfair surprise." ise." *See Bekele*, 199 F. Supp. 3d at 301 (quoting *Storie*, 2005 WL 3728718, at *9). Dr. Garg was not a current employee when he signed the Acknowledgment and agreed to the FTP's arbitration provision. Rather, "he was a prospective employee . . . about to enter into an employment relationship," and there is no evidence that he was "rush[ed]" into signing it. *See id.* (declining to find procedural unconscionability where plaintiff was prospective employee who had time to review arbitration agreement). As noted above, SVH also clearly communicated the FTP to him, and he acknowledged that he had "freely" signed the Acknowledgment. *See* Walker Dec. ¶ 4. Thus, the FTP was not hidden from him or sprung on him as a surprise as required to show

procedural unconscionability. Under these circumstances, Dr. Garg's procedural unconscionability argument must fail. *See Bekele*, 199 F. Supp. 3d at 302 (declining to find procedural unconscionability where electronic arbitration provision "required an affirmative response from" plaintiff).

Finally, Defendants expect Dr. Garg to argue that it would be unconscionable to enforce the FTP's arbitration provision because SVH did not raise arbitration under the FTP during the AHLA Arbitration proceeding which Dr. Garg filed and abandoned in 2018. This argument also misses the mark. The AHLA Arbitration was voluntarily discontinued by Dr. Garg before SVH had even filed an answer or other response to his arbitration demand. There is no rule, regulation or other legal authority that compelled SVH to raise the FTP before the withdrawal, and therefore, SVH in no way waived its ability to enforce a completely valid arbitration clause.

**IV.**    **Because all of Dr. Garg's claims are arbitrable, the Court should dismiss them.**

The Court should dismiss Dr. Garg's claims against Defendants. Where, as here, an arbitration agreement encompasses all claims that a plaintiff has asserted against a defendant, the Court must compel arbitration and, in the interest of judicial economy, should dismiss the action. *See* 9 U.S.C. §§ 3, 4; *Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010). As Defendants have demonstrated above, all of the claims that Dr. Garg has asserted against them are arbitrable. Thus, there is no reason for this Court to retain jurisdiction over Defendants, and the Court should dismiss the claims against them in favor of arbitration.[4] *See, e.g.*, *Oyola v. Midland Funding, LLC*, 295 F. Supp. 3d 14, 19 (D. Mass. 2018) (Hillman, J.) (dismissing claims in favor of arbitration); *Cyganiewicz v. Sallie Mae, Inc.*, No. CIV.A. 13-

---

[4] Alternatively, if the Court determines that the action should not be dismissed, the case should be stayed pending arbitration.

40067-TSH, 2013 WL 5797615, at *6 (D. Mass. Oct. 24, 2013) (Hillman, J.) (same); *Infinity Fluids, Corp. v. Gen. Dynamics Land Sys., Inc.*, No. CIV.A. 12-40004-TSH, 2013 WL 3158094, at *6 (D. Mass. June 19, 2013) (Hillman, J.) (same).

<b><u>Conclusion</u></b>

For the foregoing reasons, Defendants respectfully request that the Court dismiss this action and compel the arbitration of Dr. Garg's claims against them.

Respectfully submitted,

VHS ACQUISITION SUBSIDIARY NO. 7, INC. d/b/a SAINT VINCENT HOSPITAL, DAVID A. BADER, M.D., F.A.C.R., JOHN K. MUKAI, M.D. and DOUGLAS A. BURD, M.D.,

By their attorneys,


/s/ Francesco A. DeLuca
Diane M Saunders, Esq. (BBO# 562872)
Francesco A. DeLuca, Esq. (BBO# 692138)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Tel:  617-994-5700
Fax: 617-994-5701
diane.saunders@ogletreedeakins.com
francesco.deluca@ogletreedeakins.com

Dated:  July 13, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2020, this document filed through the Court's electronic filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Francesco A. DeLuca
Francesco A. DeLuca

43369995.1