UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

DR. ASHU GARG,                              )
          Plaintiff                        )
                                    )
          v.                               )        Civil Action No. 4:20-cv-40060-DHH
                                      )
VHS ACQUISITION SUBSIDIARY, INC.            )
d/b/a SAINT VINCENT HOSPITAL,               )
DAVID BADER, JOHN MUKAI, and,               )
DOUGLAS BURD                                )
          Defendants.                      )
_____)

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

       Plaintiff appealed his termination through the only conspicuous process presented to him by his employer, which included an arbitration request to the American Health Lawyers Association ("AHLA"). When his employer insisted that he had to pay 50% of the cost of the AHLA arbitration, Plaintiff confirmed that the arbitration was not mandatory, and requested to withdraw his claims because he could not afford to arbitrate at the time.

       Now, after Plaintiff filed this federal court action, Defendants assert for the first time that his claims are subject to a separate mandatory arbitration agreement that his employer failed to provide or reference in almost three years. Instead, after having represented in various proceedings that arbitration is optional and that the AHLA was its chosen arbitrator, Defendants attempt to procedurally block plaintiff from prosecuting his claims by dismissing this action and compelling him to arbitrate in a forum where he is likely time barred.  For these reasons, as set forth in greater detail below, Defendants' motion must be denied.[1]

_____

[1]     On July 22, 2020, Plaintiff filed an Assented-To Motion for Leave to Memorandum Exceeding Twenty Pages (*see* ECF Doc. No. 27), as this Opposition is 25 pages long. To date, the Motion for Leave has not been ruled on. Pursuant to Local Rule 7.1(b)(2), Plaintiff's Opposition is due July 23, 2020. To the extent that the Court denies the Motion for Leave, Plaintiff reserves the right to amend and re-file this Opposition so that it is under 20 pages.

## FACTS

After almost three years of various proceedings in and out of court, Defendants allege for the first time that plaintiff, Dr. Ashu Garg's claims are subject to mandatory arbitration, citing a document that Dr. Garg was never provided a copy of during his employment, or at any time in the past three years after he asserted that he was wrongfully terminated. Instead, Defendants directed Dr. Garg to arbitrate his claims before the American Health Lawyers Association ("AHLA"), represented to him that arbitration was not mandatory and insisted that he pay 50% of the cost, which led him to withdraw his claims at the AHLA and ultimately, file this action.

### Statement of Additional Facts

Because there are material facts that Defendants omit in the history of litigation and arbitration between the two parties that reveal the extent that they have manipulated and misled Dr. Garg, Dr. Garg submits the following additional facts for consideration.

Defendants assert that on September 8, 2016 – days before he began his residency – Dr. Garg accessed an electronic version of the Fair Treatment Process ("FTP") (with the mandatory arbitration provision) before electronically signing the Handbook and Fair Treatment Process Acknowledgement (the "Acknowledgement"), along with other onboarding documents.[2] Dr. Garg does not recognize the FTP or the Acknowledgment and suspects whether he reviewed or signed them. *See* Affidavit of Dr. Ashu Garg ("Garg Aff.") at ¶ 2. Regardless, Dr. Garg never received a copy of the FTP or Acknowledgment during or after his employment with Defendant VHS

---

[2]     Undersigned counsel requested copies of any related onboarding documents referenced in the Declaration of Mary Walker, along with any written communication indicating that SVH produced such documents to Dr. Garg in response to his previous requests for his personnel file. Yesterday, Defendants produced onboarding documents which Dr. Garg confirmed he did not receive in the past, other than one document entitled New Hire Personnel Form. Defendants did not provide any written communications that SVH produced the onboarding documents to Dr. Garg in the past.

Acquisition Subsidiary No.7, d/b/a Saint Vincent Hospital ("SVH"). *Id.* Rather, the first time Dr. Garg received a copy of the FTP and the Acknowledgment was in Defendants' Motion to Dismiss and Compel Arbitration in July 2020. *Id.* Further, although the onboarding process for a new resident at SVH would typically begin in July, Dr. Garg began his residency at SVH late (in September), and as a result, he was rushed through the onboarding process for new hires.[3] *Id.* ¶ 3. At no point did Dr. Garg have an opportunity to negotiate or change the terms of the FTP/Acknowledgement, and he was also never provided a copy of the American Arbitration Association ("AAA") rules which supposedly govern arbitrations under the FTP. *Id.*

### SVH did not follow the process outlined in the FTP

Defendants themselves failed to follow the process outlined in the FTP. The very document upon which Defendants rely states that Human Resources will explain the FTP to every employee at orientation, at exit interviews, and will remind the individual of the FTP if they state he/she was unfairly treated. *See* Exhibit B to Declaration of May Walker ("Walker Dec."), ECF Doc. No. 24-2, at p. 20. To begin with, Human Resources did not explain the FTP or the Acknowledgment to Dr. Garg at an orientation or at any point during his employment, even after he complained that he was treated differently based on his age. *See* Garg Aff. at ¶ 3. Defendants never informed Dr. Garg what these documents mean, or what they required him to do. *Id.*

### SVH told Dr. Garg to appeal per the GME

On or about June 21, 2017, SVH made the decision to terminate Dr. Garg's employment. *See* Verified Complaint at ¶ 60. At the time, SVH advised Dr. Garg that he could appeal the decision per the Graduate Medical Education Policies and Procedures Manual ("GME"). *See* Garg

---

[3]     Defendants claim that it is during the onboarding process that Dr. Garg was provided the FTP and Acknowledgement.

Aff. at ¶ 4. Accordingly, Dr. Garg requested a copy of the GME[4], and followed the stated appeal process (not the appeal process of the FTP). *Id.* Per the GME, an aggrieved employee of SVH is directed to pursue their claims through a Five-Stage Appeal process, beginning with a request for the Department Chief to modify or withdraw any written warning/order (Stage 1), and ending with a request for an arbitration, which may be initiated in writing to the Director of Medical Education (Stage 5). *See* Ex. B to Declaration of Barbara Hayes Buell ("Buell Dec."), ECF Doc. No. 24-1, at p. 20. Notably, the policy includes no language indicating that arbitration is mandatory. *Id.*

When Dr. Garg submitted the Stage 2 appeal, SVH responded that he could progress to Stage 3 of the appeal process if he still disagreed with its decision. *See* Garg Aff. at ¶ 5. At that time, in his July 12, 2017 Stage 3 Appeal letter, Dr. Garg complained that he believed he was treated unfairly on the basis of his age. *Id.*; Ex. A to Garg Aff. SVH affirmed the termination decision and advised him to proceed to Stage 4 if he wished to appeal. *Id.* There was no mention of the FTP grievance appeal process. *Id.* Dr. Garg appealed further and reiterated his concerns about disparate treatment in his August 1, 2017 Stage 4 appeal letter. *See* Garg Aff. at ¶ 6; Ex. B to Garg Aff. In its response, SVH again referred him to the GME. *Id.* Specifically, on August 8, 2017, the Chief Executive Officer of SVH rendered a Stage 4 appeal written decision in which he affirmed Dr. Garg's termination from residency. *Id.*; Ex. C to Garg Aff. The CEO further wrote: "**As per the St. Vincent Hospital Graduate Medical Education Policy and Procedure Manual**, any further appeal (Step Five) is a request for arbitration which may be initiated by written request to the Director of Medical Education." *Id.* As with every other step of the appeal process, Dr. Garg

---

[4]     As previously established in his Complaint, Dr. Garg was never provided the GME until he requested it in or around July 2017 (after his termination), despite the fact that his Resident Agreement with SVH specifically indicated that he would be provided a copy. *See* Verified Complaint, at ¶¶ 17-18.

was directed to appeal pursuant to the GME, not the FTP. *See* Garg Aff. at ¶ 7. Indeed, no one

from SVH referenced the FTP nor directed Dr. Garg to Human Resources (who was not involved

with Dr. Garg's four-step grievance appeal process), despite the fact that his appeal included claims

under the Age Discrimination in Employment Act ("ADEA"). *Id.*

### SVH did not provide the FTP to Dr. Garg

Moreover, SVH failed to provide a copy of the FTP and the Acknowledgment to Dr. Garg

throughout the GME appeal process. *Id.* at ¶ 8. Even when he sought a complete copy of all

documents in his personnel file pursuant to G.L. c.149 § 52C on or about July 25, 2017, SVH did

not include a copy of the FTP or Acknowledgment. *Id.*; Ex. D to Garg Aff. In September 2017,

Defendants represented to Dr. Garg that they provided everything to him and to his counsel.[5] *Id.*;

Ex. E to Garg Aff. None of the documents SVH produced in response to Dr. Garg's requests

contained the FTP or the Acknowledgment. *Id.*

### Dr. Garg submits a claim for arbitration claim with the AHLA

In November 2017, after Dr. Garg exhausted all other stages of the GME appeal process,

Dr. Garg asked SVH about the procedure for moving forward with an arbitration. *See* Garg Aff. at

¶ 9; Ex. G to Garg Aff. SVH referred Dr. Garg to the GME and provided specific instruction for

how to submit his claims for arbitration with the American Health Law Association ("AHLA").

*Id.* Again, Defendants made no mention of the FTP or mandatory arbitration. *Id.*

As Defendants note, on or about January 8, 2018, Dr. Garg initiated arbitration against

SVH pursuant to the GME by filing a Statement of Claim with the AHLA. As Defendants further

acknowledge, the Statement of Claim specifically includes claims for breach of contract, and

---

[5]     Dr. Garg no longer had access to the SVH's online portal for documents. *Id.*

breach of the implied covenant of fair dealing. *See* Defendants' Memorandum, ECF Doc. No. 24, at p. 5. The Statement of Claim also alleged that SVH interfered with Dr. Garg's ability to gain residency at other institutions. *See* Ex. A to Buell Dec. These claims mirror many of the claims Dr. Garg asserts in the current action, with the exception of Dr. Garg's claim of age discrimination. In response, SVH still did not raise the FTP. *See* Garg Aff. at ¶ 10. In fact, rather than assert any alleged right to arbitrate pursuant to the FTP, SVH proceeded to participate in the AHLA arbitration, and even issued its own discovery requests to Dr. Garg. *Id.*; Ex. H to Garg Aff.

### SVH represents that AHLA is its designated arbitration provider

Rather than bringing the claim of age discrimination to the AHLA arbitration with the rest of his claims, Dr. Garg brought his age-related claim before the Massachusetts Commission Against Discrimination ("MCAD") because he was told that any arbitration was optional. *See* Garg Aff. at ¶ 11. Thus, on January 8, 2018 (the same day he initiated the AHLA arbitration), Dr. Garg filed a charge at the MCAD for age discrimination against Defendants. *Id.*; Ex. I to Garg Aff. Notably, in their MCAD Position Statement in response to Dr. Garg's complaint of age discrimination, SVH stated that the AHLA was "the agency which the hospital has designated as its arbitration provider." Ex. J to Garg Aff.

### SVH advises Dr. Garg that arbitration is optional

Dr. Garg's understanding that arbitration was optional was based on **SVH's own assertions that it was optional**. *See* Garg Aff. at ¶ 12. In June of 2018, Dr. Garg attempted to find out whether arbitration was optional or mandatory. *Id.* SVH's predecessor counsel, Barbara Buell replied to the arbitrator on this issue, stating unequivocally: "**Arbitration was an option.** Dr. Garg took that option and filed a claim with the hospital's arbitration provider, the… AHLA." *Id.*; Ex. K to Garg Aff. And when the AHLA requested SVH to produce its arbitration policy, SVH

produced only the GME, not the FTP. *Id.* Moreover, during the initial course of Dr. Garg's arbitration, SVH did not take the position that the AHLA arbitration was mandatory, nor was he provided the FTP or Acknowledgment. *See* Garg Aff. at ¶ 13.

Indeed, the AHLA's Rules of Procedure for Employment Arbitration provided that if the arbitration was pursuant to a Mandatory Arbitration Clause, the employer would pay all fees and expenses. *See* Garg Aff. at ¶ 14; Ex. L to Garg Aff. Conversely, if the arbitration was voluntary, then the fees and expenses would ordinarily be paid equally by both parties. *Id.* Thus, it was to SVH's advantage to claim at the time that arbitration was optional, as it would avoid having to pay substantial fees.

Based on SVH's representations, the arbitrator ruled that the arbitration was optional. *See* Garg Aff. at ¶ 15.  In May of 2018, Dr. Garg was informed that the AHLA arbitration would require an initial deposit of $3,200 to be equally split ($1,600 from each parties) in order to move forward. *Id.* Though confused because he thought that arbitration was free for employees, he paid the initial $1,600 deposit as that was the only way to move forward in the arbitration process, and because SVH insisted that he was responsible for 50% of the arbitration costs. *Id.*

### Dr. Garg attempted to withdraw his arbitration claim

Thereafter, in June of 2018, while Dr. Garg appeared *pro se* in the AHLA arbitration (and looking for an attorney), the AHLA required him to pay an additional $12,000 deposit in order to continue with the arbitration. *See* Garg Aff. at ¶ 16. When Dr. Garg did not immediately pay the $12,000 deposit, the arbitrator told him that his case would be dismissed if he did not timely pay. *Id.* Because he could not pay the $12,000 at the time and because he believed this requirement was unfair, Dr. Garg requested a conference. On or about July 24, 2018, the arbitrator held a conference

with SVH counsel Buell and Dr. Garg. *Id*. The arbitrator and Attorney Buell presented him with the option of withdrawing his claims without prejudice, if he was not ready to proceed, so that he could bring them again at a later date. *Id*.  In reliance on these assertions, on August 30, 2018, Dr. Garg asked to withdraw from the arbitration without prejudice. *Id*.

The AHLA took no further action on this matter for almost two years. *See* Garg Aff. at ¶ 17. More recently, on June 16, 2020, after being served with this action, Defendants requested that the AHLA matter be dismissed with prejudice. *Id*. In support of their request, Defendants claim that Dr. Garg "must" submit his claims to the AAA rather than the AHLA, and that the FTP "is not the same arbitration agreement" as the AHLA. *Id*. Defendants' request is still pending before the AHLA. *Id*.

Throughout the AHLA arbitration and the proceedings at the MCAD, Dr. Garg did not believe that the arbitration of his claims was mandatory. *See* Garg Aff. at ¶ 18. He sought to withdraw from the AHLA arbitration in reliance on Defendants' representations that arbitration was optional, and believed as a result of these representations, and as a result of the Defendants never providing him a copy of the FTP, that he could proceed with his claims in court. *Id*. Thus, he filed the current action. *Id*.

## **ARGUMENTS**

"When deciding a motion to compel arbitration, a court must determine whether '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.' ... Only if all three prongs of the test are satisfied will a motion to compel arbitration be granted." *Discipio v. Anacorp, Inc.*, 831 F. Supp. 2d 392, 399 (D. Mass. 2011), quoting *Combined Energies*

*v. CCI, Inc.,* 514 F.3d 168, 171 (1st Cir. 2008). Further, courts apply "general state-law principles

of contract interpretation" to arbitration agreements. *PaineWebber Inc. v. Elahi*, 87 F.3d 589, 600

(1st Cir. 1996).

In this case, the Court cannot compel arbitration because defendants fail to satisfy both the

first and third prongs of the test. There was never any meeting of the minds on arbitration, and

Defendants admit that even if he electronically signed it (which he does not recall), Dr. Garg was

never provided a physical copy of the mandatory arbitration agreement.[6] Moreover, Defendants

---

[6]        "The burden of demonstrating that a valid agreement to arbitrate exists lies with the party seeking to compel
arbitration." *Emmannuel v. Handy Techs., Inc.*, No. CV 15-12914-NMG, 2020 WL 978082, at *5 (D. Mass. Feb. 27,
2020). Further, a party moving to enforce a provision in an electronic agreement has the burden of establishing, on
undisputed facts that the terms were reasonably communicated to and accepted by the other party. *See Ajemian v.
Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574 (2013). Dr. Garg disputes that his supposed electronic signature on the
Acknowledgment is authentic. He does not recognize receiving/signing the Acknowledgment, and was never provided
a copy of the FTP to review. The fact that the FTP and acknowledgment were never previously provided to him despite
his repeated requests for his personnel file and other employment documents supports an inference that the signature
is not authentic.

"[T]he mere fact that an agreement bears an electronic signature with a date and time stamp, by itself, is not
enough" to authenticate that signature. *Crannage v. Gold's Gym*, No. CV1808063DSFPLAX, 2019 WL 7856763, at
*3 (C.D. Cal. Nov. 6, 2019). Moreover, the declarations that Defendants have submitted do not describe any
"procedures to maintain the security of intranet passwords, to restrict authorized access to the screen which permitted
electronic execution of the arbitration agreement, to determine whether electronic signatures were genuine or to
determine who opened individual emails, and thus "it is not inconceivable … a supervisor logged on to plaintiff's
account and executed the agreement." *Kerr v. Dillard Store Servs., Inc.*, No. CIV A 07-2604-KHV, 2009 WL 385863,
at *2-5 (D. Kan. Feb. 17, 2009) (denying motion to compel arbitration).

Even if Dr. Garg had signed the Acknowledgment, the terms of the FTP were not reasonably communicated
to him. Defendants claim that the Acknowledgment contains a link that the new hires must click, which takes them to
a "written description of the Fair Treatment Process." *See* Declaration of Mary Walker, ECF Doc. No. 24-2, at p. 2. It
is not clear whether Defendants are referring the FTP itself or some sort of separate "written description" that has not
been provided to the Court. Even assuming that the link was to the FTP itself, the "hyperlink did not have the common
appearance of a hyperlink," which are "commonly blue and underlined." *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53,
62–64 (1st Cir. 2018) (holding that users of online ride-sharing service were not reasonably notified of terms of online
agreement, including the arbitration clause). In fact, it is not even clear where Dr. Garg was supposed to click on the
Acknowledgment at all—most of the text is indistinguishable for purposes of locating a hyperlink.

More importantly, the language indicating that Dr. Garg's claims would be subject to "final and binding"
arbitration is not any more conspicuous than any other terms; for example, this language is not bolded, placed in a
larger font, underlined, or capitalized. *See id.* The mandatory arbitration language in the FTP is also buried in a 14-
page policy. Rather than attempting to make this language conspicuous, "[t]hey were hidden in small print in a
paragraph of other text and there was nothing to draw attention to them or to suggest a change." *Murray v. Grocery
Delivery E-Servs. USA Inc.*, No. CV 19-12608-WGY, 2020 WL 2543170, at *5 (D. Mass. May 19, 2020). As such,
because there is not sufficient evidence to authenticate the electronic signature, and because the terms of the FTP are
not conspicuous, Defendants have failed to show that the FTP was reasonably communicated to and accepted by Dr.
Garg. *Cf. Cruz v. Jump City Everett, LLC*, No. 1784CV01016B, 2017 WL 7362343, at *1 (Mass. Super. Dec. 22,

waived arbitration under this separate agreement and should be estopped from now arguing that arbitration is mandatory. Finally, under common-law contract principles, the FTP is both procedurally and substantively unconscionable. Defendants' Motion should be denied.[7]

## I.   DEFENDANTS CANNOT SATISFY THE TEST TO COMPEL ARBITRATION.

### 1.   The parties never reached an agreement on arbitration.

Plaintiff's employment at SVH was governed by a written employment contract, which explicitly referenced the GME. Defendants claim that, in turn, the GME incorporates the FTP by reference.[8]   Regardless, because of the material contradictions between the FTP and the GME, the parties never had a meeting of the minds on arbitration. For a contract to be enforceable, "[a]ll the

---

2017) (denying defendants' motion to compel arbitration where plaintiff submitted an affidavit averring that the electronic signature was not entered by him, but by his son).

[7]      Defendants alternatively requested a stay in a footnote on page 19 of their Memorandum. Even if they had not explicitly requested a stay, a court may treat a party's request for dismissal in the context of a motion to compel arbitration "as encompassing the lesser alternative remedy of a stay and reference." *Israel v. Voya Fin., Inc.*, No. 15-CV-11914-ADB, 2015 WL 13849785, at *1 n.2 (D. Mass. Oct. 26, 2015). To the extent that the Court grants the Defendants' Motion, this case should be stayed rather than dismissed, particularly if the Court either declines to rule on the mandatory arbitrability of any of the claims or if the Court rules that only some of the claims are subject to mandatory arbitration. *See Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010) ("If some claims are non-arbitrable, the district court cannot dismiss the entire case."); *Visibility Corp. v. Schilling Robotics, LLC*, No. CIV.A. 10-12280-JGD, 2011 WL 5075816, at *6 (D. Mass. Oct. 25, 2011). Further, even if the Court were to determine that all claims are subject to mandatory arbitration, a stay in lieu of dismissal would promote judicial efficiency, as "a stay will consolidate the issues for appeal." *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 351 (D. Mass. 2015).

[8]      Quite to the contrary, the GME does not adequately incorporate the FTP. The full line in the GME which Defendants claim incorporates the FTP by reference states as follows: "[E]xcept with respect to … the mutual agreement to arbitrate disputes relating to your employment, the Facility reserves the right to modify, add, delete or revise any provisions contained in this Handbook …at any time as it deems necessary or appropriate in its sole and absolute discretion." *See* Ex. B to Buell Dec., ECF Doc. No. 24-1, at p. 21. In order for terms of the FTP to be incorporated into the GME by reference, "the document to be incorporated [must] be referred to and described in the [GME] so that the referenced document may be identified beyond doubt." *Schacter v. Circuit City Stores, Inc.*, 433 F. Supp. 2d 140, 143 (D. Mass. 2006) (service guide was not incorporated into warranty plan where reference to the service guide was "insufficiently explicit" and where ambiguities existed in the terms between the service guide and a receipt provided with the warranty plan). A reference to a "mutual agreement to arbitrate" does not explicitly identify the FTP or the Acknowledgment. More importantly, if this actually *did* refer to the FTP, the sentence in which it appears would not make sense. By incorporating the FTP, the sentence would necessarily imply that other provisions of the FTP exist within the GME. However, as previously described, the two arbitration procedures are actually inconsistent with one another. There are no other possible references to the FTP in the GME. Thus, given this ambiguity, the FTP is not incorporated by reference.

essential terms of a contract must be [sufficiently] definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined." *Moore v. La-Z-Boy, Inc.*, 639 F. Supp. 2d 136, 140 (D. Mass. 2009). "Failure of the parties to agree on the essential terms of a contract precludes the existence of an express contract." *Fraser & Wise, P.C. v. Primarily Primates, Inc.*, 966 F. Supp. 63, 76 (D. Mass. 1996). Thus, "[i]f there is no meeting of the minds as to the material terms of an arbitration agreement, or the material terms are internally inconsistent or too vague or indefinite to be enforced, a court has the authority to decline to compel arbitration." *Skuse v. Pfizer, Inc.*, 457 N.J. Super. 539, 552 (App. Div. 2019).

Here, though both the FTP and GME provide for a five-step appeal process ending in arbitration, the two policies are otherwise materially inconsistent. The FTP uses mandatory arbitration language and states that the employee's fees for arbitration "shall not exceed an amount equal to one day's pay". In stark contrast, the GME does not require arbitration and SVH insisted that Plaintiff was responsible for 50% of the arbitration cost. These two terms are significant and ultimately, dictated the course of this action. The two processes also differ in terms of the five steps, governing rules, deadlines, the adjudicator and when a decision must be issued.  *See* Ex. B to Buell Dec., ECF Doc. No. 24-1, at p. 20; Ex. B to Walker Dec., ECF Doc. No. 24-1, at pp. 10-13. Suffice to say, the two policies cannot be read harmoniously as one process. Because the two policies cannot be reconciled in a coherent manner, it is not clear to what the parties agreed.[9]

Where there are conflicting arbitration provisions across multiple agreements, this indicates that there is no meeting of the minds, and thus no actual agreement to arbitrate is formed. *See Ragab v. Howard*, 841 F.3d 1134 (10th Cir. 2016); *NAACP of Camden Cty. E. v. Foulke Mgmt.*

---

[9]      "[D]etermination of which of two or more conflicting arbitration provisions applies is a 'gateway' issue for the Court to decide." *Clicksoftware, Inc. v. Honeywell Int'l Inc.*, 257 F. Supp. 3d 148, 151 (D. Mass. 2017).

*Corp.*, 421 N.J. Super. 404, 431–34 (App. Div. 2011) (where arbitration provisions were inconsistent as to whether AAA applied, the time limits involved, and the fees required for arbitration, "the arbitration provisions … are too plagued with confusing terms and inconsistencies to put a reasonable consumer on fair notice of their intended meaning").[10] The fact alone that the two policies conflict as to whether arbitration is mandatory means that arbitration is optional. *Cf. Indep. Oil Workers at Paulsboro, N. J. v. Mobil Oil Corp.*, 441 F.2d 651, 653 (3d Cir. 1971) (where two arbitration provisions conflicted, one suggesting that arbitration was mandatory and one suggestion arbitration was optional, court ruled that arbitration was optional); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 838 F. Supp. 2d 967, 992 (C.D. Cal. 2012) (where booklet provided for non-binding dispute resolution procedure, while agreement provided for binding dispute resolution procedure "the parties' intent is not clear… [and] the conflicting arbitration provisions are not only ambiguous, they are fundamentally incompatible").

Despite the fact that Defendants argued at the AHLA arbitration that the GME and FTP are intended as separate policies, they have argued inconsistently here by claiming that the GME expressly incorporated the FTP. Reading these policies together leads to confusing, incomprehensible, and contradictory results. The FTP appeal process purports to apply to "all disputes relating to or arising out of an employee's employment with the Company or the

---

[10]    *See also Rockel v. Cherry Hill Dodge*, 368 N.J. Super. 577, 583 (App. Div. 2004) (plaintiff not compelled to arbitrate where "defendant's inclusion of two conflicting arbitration provisions in the contract documents confounds any clear understanding of the parties' undertaking"); *Souza-Bastos v. Fed. Auto Brokers, Inc.*, No. A-1594-15T3, 2016 WL 3199488, at *2 (N.J. Super. Ct. App. Div. June 10, 2016) ("A consumer, poring through the fine print of defendant's conflicting arbitration clauses, would have no idea what essential terms he or she was agreeing to. A consumer would not understand how to file a demand for arbitration, within what time frame, where to file, or what it would cost."); *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1156 (Fla. 2014) ("[e]ach of the competing dispute resolution provisions at issue contemplates the enforcement of a different remedy whose terms and conditions are irreconcilable with the terms and conditions of each of the other conflicting provisions").

termination of employment." *See* Ex. B to Walker Dec., ECF Doc. No. 24-1, at p. 9. Comparatively, the GME's appeal process purports to apply to: (1) "Corrective/Disciplinary Action" including dismissal from residency; and (2) "grievance[s] on matters of alleged violation of rights or procedures or benefits granted by these policies and by any other applicable federal or state law, [or] hospital policy… [and] on matters of conduct of a supervising physician which the Resident/Fellow believes to be unfair." *See* Ex. B to Buell Dec., ECF Doc. No. 24-1, at p. 20.

Dr. Garg's present claims fit into either of these categories. For example, Dr. Garg's ADEA claim concerns a dispute arising out of his termination of employment, a violation of federal law, and conduct from supervising physicians in which Dr. Garg was treated unfairly. Which arbitration procedure applies? Defendants fail to explain the convoluted interplay between these contradictory policies, despite their assertion that the FTP and GME are separate policies, and Dr. Garg certainly did not know.  There was no meeting of the minds with respect to arbitration.

### 2. Even if the parties agreed to arbitrate, it was optional, and it was through the AHLA.

Even assuming, *arguendo*, that there was some meeting of the minds between the parties, their past conduct demonstrates that they chose to arbitrate through the optional GME process. *See Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*, 100 F. Supp. 3d 50, 57 (D. Mass. 2015) ("[A] contract implied in fact may be found to exist from the conduct and relations of the parties."); *Lanier Prof'l Servs., Inc. v. Ricci*, 192 F.3d 1, 4 (1st Cir. 1999) (court may use the parties' course of performance to resolve the ambiguity of contractual terms). SVH repeatedly referenced the GME during the various steps of Dr. Garg's internal appeal. And when Plaintiff filed an arbitration request at the AHLA, SVH participated in the initial process. "[A]s a matter of logic, when a person must choose between two options and decides to forego one of them, then the second option necessarily becomes mandatory." *Summit Packaging Sys., Inc. v. Kenyon &*

*Kenyon*, 273 F.3d 9, 13 (1st Cir. 2001); *Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek*, *Inc.*, 455 F.3d 7, 17–18 (1st Cir. 2006) ("Where a party makes a considered choice, though it may involve some calculated risk, he 'cannot be relieved of such a choice because hindsight seems to indicate to him' that, as it turns out, his decision was 'probably wrong.' "). By choosing the procedure of the GME, SVH abandoned the FTP.

## II. DEFENDANTS WAIVED ARBITRATION AND SHOULD BE ESTOPPED FROM ARGUING THAT ARBITRATION IS MANDATORY.

### 1. Defendants waived mandatory arbitration.

"Parties are free to waive their rights to arbitration by contract. … Waiver can either be express or implied." *Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 60–61 (1st Cir. 2003). Here, SVH expressly waived its right to arbitrate pursuant to the FTP when it confirmed that the arbitration of Dr. Garg's claims at the AHLA was optional.[11] Defendants allege that these claims—such as the breach of contract claim—are subject to the FTP since they "arise from his employment and the termination of his employment." *See* Defendant's Memorandum at p. 11. Despite the fact that the FTP has a mandatory arbitration provision, SVH asserted that the arbitration of these claims is "optional". Thus, Defendants expressly waived the arbitration of these claims under the mandatory arbitration provisions of the FTP.

---

[11] Defendants attempt to argue quite the opposite—that instead, it is Dr. Garg who has waived his right to object to mandatory arbitration. The cases that Defendants cite do not address the unique circumstances here, where: (1) arbitration was initiated in one forum, pursuant to one policy, (2) the Defendants then seek to compel arbitration in another forum pursuant to another policy, and (3) the plaintiff has no knowledge of any mandatory arbitration at the time the initial arbitration proceeding is initiated. "A waiver is an intentional relinquishment of a **known** right," and thus one cannot be said to have waived what one did not know. *Russo v. Charles I. Hosmer, Inc.*, 312 Mass. 231, 234 (1942) (emphasis added). As Dr. Garg had no knowledge of the FTP until now, he could not have said to have waived his right to object to arbitration pursuant to its terms. To the extent that the court does compel arbitration under the FTP, Dr. Garg reserves his right to do so. *See Shank/Balfour Beatty v. Int'l Bhd. of Elec. Workers Local 99*, 497 F.3d 83, 90 n. 2 (1st Cir. 2007) (determining that appellant "did not waive its right to challenge arbitrability by participating in the hearing on the merits after it raised the arbitrability issues before the arbitrator and the arbitrator ruled against [the appellant]").

Even if the Court were to find that arbitration was not expressly waived, SVH (and by extension, the other individual Defendants as agents of SVH) impliedly waived mandatory arbitration through its actions. As one case explained:

> The right to arbitration may be lost… through a failure properly and timely to assert the right. … [A] party must proceed with dispatch in seeking arbitration if it does not wish to waive that right. … Where we are dealing with a forfeiture by inaction (as opposed to an explicit waiver), the components of waiver of an arbitration clause are undue delay and a modicum of prejudice to the other side. …Thus, a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice.

*Shalaby v. Arctic Sand Techs., Inc.*, No. MICV2014-03621, 2014 WL 7235830, at *5 (Mass. Super. Dec. 15, 2014) (quotation marks and citations omitted) (former employer waived its right to arbitrate after it waited six months before seeking to compel arbitration). Although cases frequently state that a party may waive the right to arbitration through prior "litigation conduct," this includes conduct in a prior arbitration as well. *See, e.g., U.S. ex rel. Schaengold v. Mem'l Health, Inc.*, No. 4:11-CV-58, 2014 WL 7272598, at *28 (S.D. Ga. Dec. 18, 2014) (**where defendants had objected to arbitrability of claim during arbitration proceeding, and Relator, in reliance on this, voluntarily dismissed the arbitration without prejudice to then file the claim in court, defendants had waived their right to compel arbitration**; by seeking to compel arbitration under this circumstances, defendants had engaged in " 'chameleonic' gamesmanship," and allowing it "would make a mockery of justice").

Here, in addition to the fact that SVH deemed the arbitration "optional," SVH also: (1) never produced the FTP during the AHLA arbitration, despite being required to produce the applicable arbitration provision; and (2) never attempted to assert its alleged rights under the FTP for the past two and a half years since the AHLA arbitration was initiated. Instead, SVH clearly

indicated through its conduct—such as issuing discovery requests at the AHLA—that it wished to proceed with arbitration under the GME rather than the FTP. Had SVH acted consistently with the mandatory provisions of the FTP, it could have initially brought or transferred the arbitration to the AAA, or sought to apply the rules of the AAA, but failed to do so. *See* Ex. B to Declaration of Mary Walker ("Walker Dec."), ECF doc. no. 24-2, at p. 18 (FTP states that rules of the AAA are to apply to arbitration).[12]

Moreover, Dr. Garg suffered substantial prejudice as a result of SVH's undue delay. *See Restoration*, 325 F.3d at 61 (noting that one factor to consider for whether an implied waiver has occurred is "whether the other party was affected, misled, or prejudiced by the delay"). The terms of the FTP provide that "[a]ny request for arbitration under the FTP must be made within one year after the event giving rise to the dispute." Had SVH timely asserted its alleged rights under the FTP rather than agreeing to arbitrate pursuant to the GME, there would have been no concerns regarding the timing of Dr. Garg's arbitration, as the AHLA arbitration was initiated within the one-year time period. Had SVH timely provided the FTP in response to his requests, Dr. Garg would have been aware of this one-year limitations period, and would have been acted accordingly. Instead, by withholding the FTP, perhaps deliberately, Defendants misled Dr. Garg into believing the only arbitration policy was through the GME. Dr. Garg also has incurred additional fees (including the fees split at the AHLA arbitration) that he would not have otherwise incurred if SVH had initially maintained that the arbitration was mandatory. *See Menorah Ins. Co. v. INX Reins. Corp.*, 72 F.3d 218, 222-23 (1st Cir.1995) (noting that proximate relationship between party's intentionally dilatory tactics and opposing party's litigation expenses constitutes sufficient "prejudice" to enforce waiver).

---

[12]     It should be noted that the issue of waiver of the right to arbitrate due to inconsistent activity in another litigation forum remains an issue for the court. *See Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 3 (1st Cir. 2005).

By now seeking to compel arbitration pursuant to the FTP years after Dr. Garg's termination, SVH is deliberately setting Dr. Garg up for a procedural trap, as this would allow them to argue before the AAA that his arbitration is untimely, which Defendants have refused to waive. In effect, by seeking to dismiss this action, seeking to dismiss the AHLA arbitration, and refusing to waive this timeliness argument through the FTP, Defendants attempt to prevent every possible avenue of relief for Dr. Garg. This is extremely prejudicial.

2. <u>Defendants are judicially and equitably estopped from arguing that arbitration is mandatory.</u>

Judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another," and "should be employed when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage." *Lydon v. Bos. Sand & Gravel Co.*, 175 F.3d 6, 12–13 (1st Cir. 1999). To determine whether to apply judicial estoppel, courts generally look at three factors: (1) "a party's earlier and later positions must be clearly inconsistent"; (2) "the party must have succeeded in persuading a court to accept the earlier position"; and (3) "the party seeking to assert the inconsistent position must stand to derive an unfair advantage…." *RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 528 (1st Cir. 2016). With respect to the second factor, "a party need not show that the earlier representation led to a favorable ruling on the merits of the proceeding in which it was made, but must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition." *Id.* With respect to the third factor, "courts often inquire as to whether judicial acceptance of a party's initial position conferred a benefit on that party." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004).

17

The present case bears similarities to a 1st Circuit decision. *See Lydon*, 175 F.3d 6. In *Lydon*, an employee initially arbitrated his claims against his employer pursuant to a collective bargaining agreement. *Id.* at 8. However, the employer successfully argued before the arbitrator that the parties already agreed his claims should instead be decided under state statutes. *Id.* In reliance on this, the employee then filed suit in a state court, the employer then removed the case to federal court, and sought summary judgment on the basis that the employee's state law claims were preempted by federal labor laws. *Id.* The 1st Circuit concluded that the employer was judicially estopped from arguing that federal law provided the employee's exclusive remedy (when the employer had argued just the opposite at arbitration), explaining:

> [Employer's] inconsistency is both patently unfair to [employee] and destructive to the integrity of the judicial system. [Employer] should not be allowed to argue successfully in each of two potential forums that [employee's] claims should be heard in the other, thereby depriving [employee] of any tribunal in which to bring his action. Not only does that strategy place [employee] at an unfair disadvantage and force him to embrace inconsistent arguments… but also it erodes the credibility of the court system and the efficacy of private arbitration agreements. If parties are allowed to argue one position to get out of arbitration and then to argue the exact opposite to avoid related court battles, the value of arbitrators as decisionmakers … will be vitiated.

*Id.* at 12-13. Thus, the employer was not entitled to summary judgment, and the 1st Circuit directed the lower federal court to remand the case to state court. *Id.* at 14.

In this case, the elements of judicial estoppel are met. SVH previously argued at the AHLA that arbitration of Dr. Garg's claims was optional, and now asserts the complete opposite—that arbitration is mandatory. SVH successfully convinced the AHLA arbitrator that arbitration was optional, as the arbitration fees were to be split among the parties. As a result, by arguing that arbitration was optional, SVH received an unfair advantage – and reduced its cost of arbitration. Moreover, Dr. Garg requested to withdraw his arbitration claim relying on SVH's representations that it was optional and that he was responsible for 50% of the arbitration cost.  Now, by arguing

it is mandatory, SVH seeks to have the present action dismissed. Additionally, SVH, like the employer in *Lydon*, seeks to argue inconsistent positions to block all avenues of relief. That is, SVH seeks to compel arbitration at the AAA, only to then dismiss the AAA arbitration on procedural grounds. *See Bishara v. Brown, Daltas & Assocs., Inc.*, 21 Mass. App. Ct. 941, 943 (1985) ("[O]ne who actively thwarts the attempt of the other party to have the dispute resolved by arbitration should be held estopped to invoke the arbitration clause to avoid suit.").

SVH should also be equitably estopped from arguing that arbitration is mandatory. "[T]he doctrine of equitable estoppel precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). The elements of equitable estoppel are: (1) "A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made," (2) "An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made," and (3) "Detriment to such person as a consequence of the act or omission." *Croft v. Nat'l Bedding Co.*, No. CIV A. 04-11487-RWZ, 2006 WL 1716754, at *3 (D. Mass. June 20, 2006).

All three elements of equitable estoppel are met here. SVH represented that arbitration was optional. In reliance on this representation, Dr. Garg separately proceeded with his age discrimination claim before the MCAD, sought to close out his claim at the AHLA (because he could not afford to arbitrate at that time and believed he could proceed with his claims in court), and initiated this current action. Now, as a result of SVH's representations, Dr. Garg may be denied a forum for his claims in this action (if the court grants the Defendants' motion), and in any forum (because the defendants request dismissal in the AHLA arbitration and will likely argue timeliness before the AAA). As previously described, Dr. Garg also has incurred additional fees (including

the fees split at the AHLA arbitration) that he would not have otherwise incurred if SVH had originally represented that arbitration was mandatory.

Defendants should be estopped from arguing that arbitration is mandatory. Their conduct toward Dr. Garg has been fundamentally unfair and subjects them to liability. By purposely withholding the FTP, despite Dr. Garg's repeated requests for personnel records, SVH acted in bad faith to frustrate Dr. Garg's attempts to pursue his claims and to secure economic advantages (i.e., the fee-splitting at the AHLA arbitration). *See Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005) (breach of implied covenant of good faith and fair dealing occurs when action is taken "in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage"). In fact, by forcing Dr. Garg to split fees at the AHLA arbitration, SVH breached the terms of the FTP, which provides that the employee's share of the arbitrator's costs shall not exceed an amount equal to one day's pay. *Cf. Rodriguez v. Wet Ink, LLC*, No. 08-CV-00857-MSK-CBS, 2011 WL 1059541, at *4 (D. Colo. Mar. 22, 2011) (court declined to compel arbitration where defendant breached arbitration agreement by refusing to pay its share of the arbitration costs; allocation of costs was material term of agreement).

Further, SVH was under a legal duty to provide the FTP in response to Dr. Garg's requests. *See* M.G.L. c. 149, § 52C (employer obligated to provide employee's personnel record within 5 business days of request; personnel record includes any "waivers signed by the employee"). By failing to timely disclose the Acknowledgment, SVH essentially represented that the GME was the only applicable arbitration policy. *See In re Access Cardiosystems, Inc.*, 404 B.R. 593, 643 (Bankr. D. Mass. 2009) (failing to disclose material information is actionable if defendant has a legal duty to disclose, such as when a statute imposes such a duty, or when the failure renders an

otherwise accurate statement misleading).  Dr. Garg acted in reliance on this representation to his detriment if this action is dismissed.

### III.     THE FTP/ACKNOWLEDGMENT IS UNCONSCIONABLE.

Finally, the FTP should not be enforced because it is unconscionable.  There are two types of unconscionability: "(1) procedural unconscionability, meaning the circumstances surrounding the adoption of the arbitration agreement, and (2) substantive unconscionability, meaning the fairness of the arbitration provision itself. … As the First Circuit has summarized, to establish unconscionability a plaintiff must demonstrate 'both a lack of meaningful choice about whether to accept the provision in question, and that the disputed provisions were so onesided as to be oppressive.' "  *Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 179 (D. Mass. 2006).

A California case is instructive on the issue of unconscionability, because it deals with almost identical provisions. *See Woods v. JFK Mem'l Hosp., Inc.*, No. G050286, 2014 WL 5475231 (Cal. Ct. App. Oct. 30, 2014). In *Woods*, as part of his employment at a hospital, a nurse signed a nearly identical Acknowledgment and FTP. *Id.* at *1-2.[13] The court found the FTP both procedurally and substantively unconscionable, and therefore the nurse was not compelled to arbitrate his claims. *Id.* at *8.

The court reasoned that the FTP was procedurally unconscionable because: (1) the nurse had no opportunity to negotiate or change the terms, and thus the FTP was a contract of adhesion; (2) the FTP provided that arbitration was mandatory, despite the fact that the nurse's collective bargaining agreement indicated that arbitration was supposed to be voluntary; (3) the employee did not receive a copy of the AAA arbitration rules that would have governed any arbitration

---

[13]     This is likely because the nurse's hospital and SVH are owned by the same parent corporation.

proceeding; and (4) "when taken as a whole, … the entire arbitration scheme [was] unduly confusing, and therefore oppressive, to a layperson. Rather than designing a single, reasonably short document containing the entire arbitration agreement and nothing else, … [employer] has chosen to make its procedure needlessly complex. The actual agreement to arbitrate is buried in the fourth paragraph of a document entitled 'Employee Acknowledgment Form.' The details of this are then toward the end of another document, the FTP. The FTP itself is a complex morass of complaints and appeals the employee is required to undertake before even being allowed to arbitrate …". *Id.* at *4-6.

The court held that the FTP was substantively unconscionable because there were confusing and conflicting provisions in the FTP and the Acknowledgment as to whether the company could unilaterally change the FTP policy/procedures. The court explained:

> The FTP's language stating [employer] "will not modify or change *the agreement* between you and the company to use final and binding arbitration" (italics added) is not wholly consistent with the Acknowledgment's language that [employer] can "change, rescind or add to" anything except the agreement to arbitrate. The FTP's language implies only that [employer] cannot change the agreement to use arbitration, while the Acknowledgment may imply something more. At a minimum, it is confusing, and appears to leave the door open for [employer] to make changes without employee agreement. … [Employer] has unquestionably reserved the right to change the pre-arbitration procedures in the FTP. Already burdensome to the employee at four steps, there is nothing to stop [employer] from unilaterally expanding these procedures to add yet more burdens to employees before they are even permitted to begin arbitration. … [Employer], by giving itself the permission to make such changes unilaterally, and without any notice, has created an unfairly one-sided agreement.

*Id.* at *6-7. In closing, the court noted that it was "perplexed" to continue to see such a "confusing, convoluted and fundamentally unfair" arbitration agreement. *Id.* at *7.

Here, because the FTP and Acknowledgment are almost identical to those in *Woods*, the rationale of that case applies here. In the present case, Dr. Garg: (1) never had an opportunity to

negotiate or change the terms of the FTP or Acknowledgment, and was told he would not be hired unless he completed all documents; (2) never had the FTP/Acknowledgment explained to him, what these documents meant, or what they required him to do; (3) was rushed through the onboarding process; and (4) was never provided the AAA rules that would supposedly govern an arbitration under the FTP. Additionally, and as previously noted, the FTP provides for mandatory arbitration while the GME provides for optional arbitration, and the agreement to arbitration/details of arbitration are buried in a similar manner as they were in the *Woods* case. Thus, the FTP is procedurally unconscionable.

With respect to substantive unconscionability, the language in the Acknowledgement and FTP concerning SVH's unilateral right to modify is *virtually identical* to the language in the *Woods* case. *Compare Woods*, 2014 WL 5475231, at *6 *with* Ex. A and Ex B to Walker Dec., ECF Doc. No. 24-2, at pp. 6, 19. Thus, this language makes the agreement substantively unconscionable. *Cf. Douglas v. Johnson Real Estate Inv'rs, LLC*, 470 Fed. App'x 823, 826 (11th Cir. 2012) (holding that under Massachusetts law, an arbitration provision was illusory and unenforceable because employer retained unilateral right to alter terms without notice to employee); *Domenichetti v. Salter Sch., LLC*, No. CIV.A. 12-11311-FDS, 2013 WL 1748402, at *5 (D. Mass. Apr. 19, 2013) ("Even in cases where the employee has acknowledged his or her receipt of an arbitration agreement—either independently or contained within an employee handbook—courts have found the obligation to arbitrate unenforceable when the employer retains the unilateral right to change the terms of the agreement because such a right renders any recited promise illusory."); *Nat'l Fed'n of the Blind v. Container Store, Inc.*, No. CV 15-12984-NMG, 2016 WL 4027711, at *12 (D. Mass. July 27, 2016) (noting that where the defendants reserved the unilateral right to modify the terms and conditions of an arbitration provision, this implicated "the unfairness of a situation where two

23

parties enter into an agreement that ostensibly binds them both, but where one party can escape its obligations under the agreement by modifying it").

The agreement is substantively unconscionable for another reason—as previously described, the FTP and GME are fundamentally irreconcilable. *Cf. Skirchak*, 432 F. Supp. 2d at 180 (arbitration provision was substantively unconscionable in part because it was "written in a sufficiently confusing and technical style that a reasonable or average employee would not have been able to understand"). In their Memorandum, Defendants claim that the conflicting provisions do not make the FTP unconscionable because the FTP is incorporated by reference into the GME. Defendants' argument on this point misses the mark because, even assuming this is true,[14] an incorporation by reference *does not resolve any of the inherent contradictions previously outlined*. It would not matter if the GME references the FTP, where neither policy actually resolves the issue of what an employee is expected to do in the case that an issue is appealable pursuant to both policies. No reasonable employee would accept both the FTP and the GME when it is not clear to what they are agreeing.

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), plaintiff wishes to be heard on Defendants' Motion to Dismiss and Compel Arbitration and request that a hearing be scheduled on this matter.

---

[14]     As previously described above, the GME does not adequately incorporate the FTP by reference.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court deny the Defendants' Motion to Dismiss and Compel Arbitration in its entirety.[15]

Respectfully submitted,
DR. ASHU GARG
By his attorneys,

_/s/ Matthew Perry_____
Kavita M. Goyal (BBO # 654013)
Matthew Perry (BBO # 703809)
Rosen & Goyal, P.C.
204 Andover Street, Ste. 402
Andover, MA 01810
(978) 474-0100
kgoyal@rosenlawoffice.com
Date: July 23, 2020                                  mperry@rosenlawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2020, this document filed through the Court's electronic filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

_/s/ Matthew Perry_____
Matthew Perry

---

[15]     To the extent that the Court grants the Defendants' Motion, the Court should compel arbitration before the AHLA rather than the AAA, to prevent the Defendants from unjustly raising timeliness arguments or other procedural issues. By its own terms, the FTP does not mandate arbitration exclusively before the AAA, and therefore there is no reason to compel arbitration specifically to the AAA, even assuming that the FTP is valid. *See Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 76 (S.D.N.Y. 2012) ("[W]here a designated arbitral forum is integral to the parties' agreement, a court may not impose a different arbitral forum on a party. … Where, however, the parties' agreement reflects a broader intention to arbitrate even if the designated forum or fora prove unavailable, there is no such barrier to the appointment of an alternative forum."); *Dean v. Heritage Healthcare of Ridgeway, LLC*, 408 S.C. 371, 759 S.E.2d 727 (2014) (arbitration agreement's designation of AAA was not a material term of agreement, and thus agreement was not rendered unenforceable by AAA's unavailability to arbitrate; although agreement provided that arbitration "shall follow the rules" of AAA, nothing in agreement indicated that AAA was to serve as the exclusive arbitral forum); *Green Valley Trading Co. v. Olam Americas, Inc.*, No. CV 19-11524-FDS, 2020 WL 65092, at *4 (D. Mass. Jan. 7, 2020) (noting that under the FAA and its state counterpart, court may select an arbitrator when arbitration selection process fails)