UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DR. ASHU GARG, | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 4:20-40060-TSH |
| v. | ) | |
| | ) | |
| VHS ACQUISITION SUBSIDIARY NO. 7 | ) | |
| d/b/a SAINT VINCENT HOSPITAL, | ) | |
| DAVID BADER, JOHN MUKAI, and | ) | |
| DOUGLAS BURD, | ) | |
| Defendants. | ) | |

# ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Docket No. 43)

**MARCH 31, 2021**

**HILLMAN, D.J.,**

This is an age discrimination suit brought by Dr. Ashu Garg ("Plaintiff") against the faculty members and hospital which he alleges wrongfully terminated him from his radiology medical residency program in 2016. After review of Magistrate Judge Hennessy's Report and Recommendation (Docket No. 43) and the Defendants' objection (Docket No. 45), I ***adopt*** the Report and Recommendation. Accordingly, the Defendants' Motion to Dismiss, and in the alternative to compel arbitration, is ***denied***.

**Facts**[1]

Before beginning his fourth-year post graduate medical residency program at St. Vincent Hospital ("SVH"), Plaintiff was required to complete an online onboarding process. Using a link sent to his email address, Plaintiff accessed the program, which directed him to review and electronically sign his acceptance of several hospital policies. Of import here are two policies which committed Plaintiff to resolve claims against SVH using two different arbiters, depending on the nature of the dispute: (1) the Tenet[2] Employee Handbook and Open Door and Fair Treatment Policies ("FTP") and (2) the Resident Agreement.

The onboarding program first required Plaintiff to review and accept the Tenet Employee Handbook and the Open Door and Fair Treatment Process Policies ("FTP"). The text below the hyperlink to the Fair Treatment Process policy stated:

> "I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet . . . I understand that final and binding arbitration will be the sole and exclusive remedy for any such claims and disputes . . . I also agree that such arbitration will be conducted under . . . the procedural rules of the American Arbitration Association ("AAA") unless the Company and I agree otherwise . . . I further acknowledge that this mutual agreement to arbitration may not be modified or rescinded except in writing by both me and the Company."

Plaintiff clicked on the link to the FTP, and a copy of the 14-page policy appeared on his screen, including the provision that any employment-related disputes between Plaintiff and SVH would be subject to mandatory arbitration. After Plaintiff had opened links and accessed copies of both the Employee Handbook and the FTP, he was directed to a space for his e-signature.

---

[1] These abbreviated facts are drawn from Magistrate Judge Hennessy's more detailed findings at Report & Recommendation 2-8 (Docket No. 43).
[2] Tenet Healthcare is the corporation which operates SVH. (Docket No. 24-2 at 1).

2

SVH records show that Plaintiff digitally signed the Acknowledgement agreeing to the Handbook and FTP policies on September 8, 2016. (See Docket No. 34-1 at 9).

Four days later, Plaintiff signed a paper contract called the Resident Agreement, under which SVH agreed to appoint him to a one-year term as a Resident Physician, pay him a certain salary and benefits; he agreed to fulfill the residency program's educational requirements. (Docket No. 1-2). The contract stipulated that the Agreement could be terminated "[a]s provided in the Hospital's Graduate Medical Education Policy." (Docket No. 1-2 at 4). SVH's Graduate Medical Education ("GME") Policy provides a five-step appeal process for a resident who has been terminated from an SVH residency program. (Buell Decl. at 20, Docket No. 24-1). Steps One to Four are internal actions which culminate in a meeting with the SVH CEO and Department Chief or a Hospital Hearing Board. (*Id.*). Step Five provides that "a request for arbitration may be initiated by written request to the Director of Medical Education" if Steps One through 4 are unsuccessful. (*Id.*). The GME Manual also stated that "except with respect to the employment-at-will policy and the mutual agreement to arbitrate disputes relating to your reemployment, the Facility reserves the right to modify, add, delete or revise any provisions contained in this Handbook . . ." (Docket No. 24-1 at 21).

Plaintiff began his residency program on September 12, 2016, and interacted principally with Dr. David Bader, the Director of SVH's Radiology Residency Program, and two faculty members, Dr. Burd and Dr. Mukai. Plaintiff began to perceive that he was subject to unreasonable criticism based on his age rather than his medical skills; at 46, he was the oldest resident in the program. He received a written warning that he was not meeting performance expectations on February 23, 2017, but SVH offered to renew his residency on April 26, 2017. On May 3, 2017, SVH sent Plaintiff a Stage Two Written Warning. Plaintiff accepted the

renewal offer on May 15, 2017.  On June 21, 2017, Dr. Bader and Dr. Kanzaria met with Plaintiff and handed him a letter dismissing him from the residency program based on his failure to meet performance standards, which explained that he could appeal the decision through the GME Manual's five-step appeal process.  (Docket No. 1-14 at 2, 5).

Plaintiff appealed his termination through the GME Policy Step 4 process, at which point the SVH CEO affirmed his termination by email on August 8, 2017, adding that "[a]s per the St. Vincent Hospital Graduate Medical Education Policy and Procedure Manual, any further appeal (Step Five) is a request for arbitration which may be initiated by written request to the Director of Medical Education."  (Docket No. 28-1 at 24).  Responding to an inquiry from Plaintiff about the process to proceed with arbitration, SVH's counsel referred Plaintiff's ex-counsel to the AHLA, which she identified as SVH's arbitration provider for Graduate Medical Education grievances, in order to file a claim.  (Docket No. 28-1 at 38).  Plaintiff filed a claim with the AHLA on January 8, 2018 and a complaint with the Massachusetts Commission Against Discrimination on February 3, 2018 (the MCAD complaint was withdrawn on August 8, 2019). After disagreeing over responsibility for the remainder of the arbitration deposit, Plaintiff withdrew from the AHLA arbitration on August 30, 2018, and no further action was taken.

In 2019, Plaintiff filed a complaint against SVH in Massachusetts Superior Court (which he dismissed), a separate action against SVH on a separate matter (summary judgment awarded against Plaintiff), and a complaint against SVH with SVH's education accrediting agency (closed without any adverse finding).

Procedural History

On May 28, 2020, Plaintiff filed suit in this Court against Defendants for age discrimination, in violation of 29 U.S.C. § 621 (Count 1); violation of Mass. G. L. c. 151B

(Count 2); breach of contract (Count 3); breach of the implied covenant of good faith and fair dealing (Count 4); and tortious interference with contractual relations with the American Board of Radiology (Count 5) and New York University Medical Center (Count 6). Defendants filed a motion to dismiss or compel arbitration, which I referred to Magistrate Judge Hennessy.

Report and Recommendation

Judge Hennessy found that the arbitration provisions in the FTP and Resident Agreement arguably conflict, calling into question whether there was a meeting of the minds between Plaintiff and SVH necessary to enforce the FTP against Plaintiff. Notwithstanding whether there was a meeting of the minds, he recommends that the Court find that the Defendants are equitably estopped from enforcing the FTP's mandatory arbitration provision against Plaintiff because SVH's misrepresentation induced Plaintiff to reasonably believe that "(1) Defendants represented that arbitration was optional and acted in bad faith by purposely withholding the FTP, (2) Plaintiff filed his age discrimination claim with the MCAD and withdraw his AHLA arbitration claim in reliance on this representation, and (3) as a result, Plaintiff may be denied a forum for his claims and incurred additional costs that he would not have had Defendants initially represented that arbitration was mandatory." (Docket No. 43 at 21).

Plaintiff filed no objections to the Report and Recommendations. Defendants object that the FTP arbitration agreement is enforceable, and that equitable estoppel is not applicable. (Docket No. 45). I disagree and concur with Judge Hennessy.

## Discussion

Equitable estoppel "seeks to prevent injustice when an individual detrimentally and predictably relies on the misrepresentation of another." *Nagle v. Acton-Boxborough Regional*

*School Dist.*, 576 F.3d 1, 3 (1st Cir. 2009).  To invoke equitable estoppel, "(1) the first party must make 'a definite misrepresentation of fact' with 'reason to believe' the second party will rely on it [...]; and (2) the second party must reasonably rely on that representation to its detriment[.]."  *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 782 (1st Cir. 2014).

*Misrepresentation*

SVH denies that it made any misrepresentations to Plaintiff about the mandatory nature of FTP arbitration, but the record shows otherwise.  SVH never produced the FTP prior to this action or when Plaintiff requested his personnel file, but repeatedly informed Plaintiff that the optional GME arbitration provision was the appropriate mechanism to appeal his termination.  SVH never mentioned the FTP during the four steps of Plaintiff's GME grievance process, which culminated in the SVH CEO's August 8, 2017 letter affirming his termination and noting that "*any* further appeal" must be made by invoking the optional arbitration provision in the GME Manual by filing an arbitration request with AHLA.  (Docket No. 28-1 at 24) (emphasis added).  Then on November 29, 2017, SVH's counsel asked Plaintiff's former counsel to tell Plaintiff that the procedure to proceed with arbitration was to file a claim with the AHLA as SVH's GME grievances arbitration provider. (Docket No. 28-1 at 37-39).

By providing information about how to file an arbitration demand under the GME optional arbitration and remaining silent on how to initiate arbitration with the AAA under the FTP mandatory arbitration provision, SVH's CEO and Counsel sought to steer Plaintiff towards their preferred arbitration forum.  When Plaintiff directly asked SVH's counsel whether arbitration was mandatory, SVH's counsel replied that "[a]rbitration was an option" that Plaintiff had exercised by filing a claim under the GME optional arbitration provision with AHLA. (Docket No. 28-1 at 56).

6

SVH objects that it had no obligation to prompt Plaintiff about his mandatory obligation to arbitrate under the FTP because his claims in the GME appeals process and the AHLA arbitration were educational rather than employment based.  As Judge Hennessy noted, SVH's distinction between employment and educational claims appears to be meaningless in this context.  *Abdel-Raouf*, a race-based discrimination case brought by a terminated medical resident and cited by defendant for the hybrid employment/educational nature of medical residency programs, stands for the proposition that courts should defer to medical schools' decisions on students' professional competency as doctors, but it does not go so far as to say that terminating a medical residency is not the same as terminating employment.  *See* 2015 WL 687440 at *3 (D. Conn. Feb. 18, 2015).  By terminating Plaintiff's educational medical residency program, SVH also terminated his employment, depriving him of his salary and other benefits.  Furthermore, the relief Plaintiff sought in the GME appeals process and the AHLA arbitration was not purely educational: if reinstated, Plaintiff would also be re-employed and resume receiving compensation for his work at SVH.  SVH should have known that at least some of Plaintiff's claims were therefore employment-related and could trigger the FTP when it repeatedly referred Plaintiff to the optional GME arbitration provision.

SVH further objects that producing Plaintiff's personnel file without the FTP was not a misrepresentation because the Massachusetts Personnel Records Statute, M.G.L. c. 149, § 52C, does not require employers to keep arbitration agreements or employee acknowledgements of such agreements in personnel records.  I find this argument unavailing.  By agreeing to the FTP, Plaintiff waived his legal rights to resolve employment disputes in court and agreed to a one-year statute of limitations unless the claim was premised on a statute with a longer statute of limitations.  Defendants have not explained why the FTP does not qualify as a "waiver[s] signed

by the employee," which is a specific type of documents that the Act requires employers to keep with an employee's personnel file. Moreover, even if SVH's actions did not violate the Act, "conduct contrary to general principles of fair dealing" can constitute misrepresentation for purposes of equitable estoppel. *Greene v. Ablon*, 794 F.3d 133, 143 (1st Cir. 2015).

*Reasonable Reliance and Detrimental Effect on Plaintiff*

I find that Plaintiff's reliance on SVH's representations about the optional GME arbitration clause was reasonable. Plaintiff asked SVH Counsel whether arbitration was optional in email correspondence and was entitled to rely upon her answer that it was.

I also find that Plaintiff's reliance on SVH's representations that arbitration was optional did work to his detriment. If SVH had timely asserted its right to mandatory arbitration under the FTP, Plaintiff would not have filed and incurred costs in the AHLA arbitration and may not have chosen to file this case in federal court, for which he has paid filing fees and retained counsel.

I agree with Defendants that the same statute of limitations would apply to Plaintiff's claims whether he brought them under FTP arbitration or in this court. The FTP's one-year limitation does not apply if the statute governing the claim provides a longer limitation period. (Docket No. 24-2 at 18). Even if the Court compelled Plaintiff to arbitrate the claims in this case, all of Plaintiff's claims are subject to the same limitations period they are subject to in this forum because state and federal law provides limitations periods longer than one year for all claims. See 29 U.S.C. § 626(e) (Age Discrimination in Employment Act); M.G.L. C. 260 § 2 (breach of contact claims, including tortious interference and breach of covenant of good faith and fair dealing). However, Plaintiff's nearly three-year delay in asserting the FTP mandatory arbitration clause may mean that some of Plaintiff's claims which were viable when he filed his

complaint in May 2020 may now be time-barred if he filed an arbitration demand through the FTP.

## **Conclusion**

For the reasons set forth below, the Report and Recommendation is **_ADOPTED_**.

**SO ORDERED.**

**_/s/ Timothy S. Hillman_**
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
