UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DR. ASHU GARG,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>VHS ACQUISITION SUBSIDIARY NO. 7 d/b/a<br>SAINT VINCENT HOSPITAL, DAVID BADER,<br>JOHN MUKAI, and DOUGLAS BURD<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 4:20-cv-40060-NMG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF
ADDITIONAL MATERIAL FACTS IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendants VHS Acquisition Subsidiary No. 7, Inc. d/b/a Saint Vincent Hospital ("SVH"), David A. Bader, M.D., F.A.C.R. ("Bader"), John K. Mukai, M.D. ("Mukai") and Douglas A. Burd, M.D. ("Burd") (collectively "Defendants"), by and through their counsel, hereby submit their Response to Plaintiff Ashu Garg, M.D.'s ("Garg") Statement of Additional Material Facts [ECF Docket Doc. 100, pp. 102-119].

1. Denied except admitted only that Garg was the oldest radiology resident at the time he was employed by SVH. *See* ECF Doc. No. 84-8, pp. 196-203 (Def. Ex. 110).

2. Denied. SVH was not required by the ACGME to maintain a certain minimum number of residents in any residency year and Bader could have chosen to fill the open R3 position with a candidate other than Garg, or not to fill the position at all. *See* ECF Doc. No. 81 Statement of Undisputed Material Facts in Supp. of Def.s' Mot. for Summ. J., ("SOF") at ¶ 36.

3. Denied. The decision to allow Garg to progress as a PGY4 in the SVH program was

      Bader's alone, as the Program Director. It was his decision, as the Program Director, which specific, and how many, credits from the University of Oklahoma to accept and at what specific level to place him in the SVH program. *See* Supplemental Saunders Dec., dated December 21, 2022 ("Supplemental Saunders Dec."), Ex. 115 (Bader Dep. From U of O case) p. 41:9-17.

4. Denied. The residents who were part of the SVH program had to assume duties that a different, more competent, PGY4 would otherwise have assumed, *e.g.*, independent night float rotations, but which Garg did not perform because of performance deficiencies. ECF Doc. No. 74 (Bader Dec.) at ¶¶ 26, 38, 41. This is because PGY4/R3 residents are expected to take diagnostic radiology call independently, which Garg did not do for the most part. *Id.* In addition, Garg's shortcomings caused the faculty members in the SVH program had to devote enormous time and effort in trying to remediate Garg's performance failures. *See id.* at ¶¶ 38, 41-43, 49, 55, 60. Even the radiology technologists had to do more work because of Garg's performance issues and patient issues he caused. *See id* at ¶¶ 57-58, 64-65, and 69.

5. Denied. Bader's testimony is that he viewed Garg's age, *i.e.*, maturity, "*and prior experience* as a surgeon" as positive aspects of his application. ECF Doc. No. 74 (Bader Dec.) at ¶ 32.

6. Admitted.

7. Defendants are without sufficient knowledge to admit or deny these allegations.

8. Denied except admitted that Garg started his R3 Resident Year later than the usual start date in June. None of the documents cited in this paragraph of Garg's SOF support the notion that he "was expected to complete his R3 residency year by September 2017, and

his final year of residency (R4) by September 2018."

9. Denied. The Resident Agreement was signed by Garg in September 2016 and was for an initial term running from June 27, 2016 to June 30, 2017, *i.e.*, the "Resident Year." *See* ECF Doc. No. 84-8 (Def. Ex. 90 – Garg's Resident Agreement) at p. 105, ¶ 3(a)(defining the "initial term" of the Agreement).

10. Denied that Bader knew Garg had no night float experience. *See* ECF Doc. No. 74 (Bader Dec.) at ¶ 30; *see also* ECF Doc. 84-7 at p. 75 (Def. Ex. 38)(Garg signs off without objection on a March 2, 2017 memo from Bader who notes that Garg "emphasized in the interview process" that he "worked on call for a level 1 trauma center although all [his] cases were over-read in real time."). Admitted only that SVH prepared Garg to take night float, as was expected of all SVH PGY4 residents, and that Garg began night float on October 31, 2016. *See* ECF Doc. No. 81 (SOF) at ¶¶ 25, 45-46, 108.

11. Denied. Multiple SVH faculty members noticed Garg's problems reading reports in October and November 2016. *See* ECF Doc. No. 84-7 at pp. 1-71 (Def. Exs. 35 and 35). Garg's claim that other physicians "confirmed that Dr. Burd was overly critical of Dr. Garg" is a completely unsupported fabrication.

12. Denied except admitted only that Garg complained to Bader about allegedly "unsound evaluation gradings" by Burd. Notably, Garg did not complain that the gradings were discriminatory. *See* ECF Doc. No. 101-2 at p. 102 (Pl. Ex. 16). Denied that Bader "handwaved Dr. Garg's accusation away." *See* ECF Doc. No. 84-7 at p. 75 (Def. Ex. 38).

13. Denied.

14. Denied. Bader told Garg his schedule would not allow him to finish his residency on June 30, 2018. *See* ECF Doc. No. 81 (SOF) at ¶ 131.

15. Denied except admitted that Bader's letter to the ABR was supportive of Garg's goals. *See* ECF Doc. No. 81 (SOF) at ¶ 133.

16. Denied. As explained by Bader, Garg was required to work the same number of hours as other residents. *See* ECF Doc. No. 74 (Bader Dec.) at ¶ 97.

17. Denied except admitted only that Bader believed Garg had the potential to be successful. Denied that Bader believed Garg would be successful if he continued on his current path. *See* ECF Doc. No. 81 (SOF) at ¶¶ 46-78.

18. Denied except admitted only that Bader, Gregory Berberian, M.D. ("Berberian"), and Brian Midkiff, M.D. ("Midkiff") provided letters of reference, not "letters of recommendation," for Garg's fellowship applications. *See* ECF Doc. No. 81 (SOF) at ¶¶ 135-142; ECF Doc. No. 74 (Bader Dec.) at ¶ 102-106; ECF Doc. No. 75 (Berberian Dec.) at ¶ 5.

19. Admitted.

20. Denied except admitted that Garg obtained a fellowship. Defendants lack sufficient information to admit or deny that it was "prestigious."

21. Denied except admitted only that Bader signed Garg's renewal letter on April 26, 2017 and that at that time Bader believed Garg had the potential to complete his R3 residency year. Garg's claim that Bader did not tell Garg that he might not successfully complete his R3 residency year until the June 21, 2017 termination meeting is totally unsupported by the record evidence. *See* ECF Doc. No. 81 (SOF) at ¶¶ 50-78. Garg met with Bader and Kanzaria the day after Bader signed the renewal letter. *See* ECF Doc. No. 84-8 at p. 29 (Def. Ex. 62) and 31 (Def. Ex. 63)(discussing the content of that meeting). During that meeting, they discussed Garg's poor performance and the fact that he would be issued a

4

Stage 2 warning. *See* ECF Doc. No. 84-8 at p. 29 (Def. Ex. 62). The Stage Two Written Warning, which was then issued by Bader on May 3, 2017, advised Garg in writing that the consequences of noncompliance could include "dismissal from the residency program." *See* ECF Doc. No. 84-8 at p. 32 (Def. Ex. 63).

22. Admitted.

23. Denied except admitted that Bader signed Garg's and Resident 5's renewal letter on April 26, 2017. The signing of Garg's renewal letter was nothing more than an administrative formality. *See* ECF Doc. No. 81 (SOF) at ¶¶ 156-160; ECF Doc. No. 101-1 at 198:1-3, 251:10-17 (Pl. Ex. 2 – Bader's Tr.).

24. Denied. *See* ECF Doc. No. 81 SOF at ¶¶ 163-167.

25. Denied except admitted only that Mukai stated in his deposition that "the best radiologists I know are old because they've seen the most" as part of an explanation of why Garg's age did not matter to him. *See* ECF Doc. No. 84-1 at 115:9-21 (Def. Ex. 2 – Mukai Tr.). Defendants made no "claims" during Garg's deposition. The cited testimony is Garg's only.

26. Denied except admitted only that Mukai was one of over a dozen evaluators of Garg who raised concerns to Bader about Garg's performance as a PGY4 radiology resident. *See* ECF Doc. No. 81 (SOF) at ¶¶ 46-98. Denied that Mukai made these comments to "influence" Bader outside of the normal procedure of educating residents and the provision of feedback about a resident who was not performing at the required standards.

27. Admitted.

28. Denied except admitted only that on May 12, 2017, Garg wrote in an email to Bader saying that his poor scores from Burd were "just an example of discrimination." *See* ECF

Doc. No. 84-8 at pp. 130-131 (Def. Ex. 95). Denied that Burd at any point treated Garg differently. Denied that Mukai made an age-related comment or that Burd treated Garg differently because of his age. Denied that Garg's email was a complaint of discrimination when the email did not reference discrimination on the basis of any protected class and Garg immediately clarified afterward that he was not accusing Burd of discrimination. *See* ECF Doc. No. 81 (SOF) at ¶¶ 168-170.

29. Denied except admitted only that Bader responded to Garg's use of the word "discrimination" by arranging a meeting with Human Resources. Denied that this prompted Garg to "pause his complaint" as he did not want to escalate the situation and jeopardize his residency. *See id.*

30. Admitted.

31. Denied. Bader had already issued a Second Warning to Garg advising him that he could be dismissed from the SVH program for noncompliance. *See* ECF Doc. No. 84-8 (Def. Ex. 63) at pp. 31-32.

32. Admitted.

33. Denied except admitted only that Bader's testimony is accurate regarding the use of the word "discrimination." Denied that Bader's testimony indicates that he viewed Garg to have complained about discrimination following Garg's quick clarification that he was not accusing anyone. *See* ECF Doc. No. 81 (SOF) at ¶¶ 170-172.

34. Denied except admitted only that on May 24, 2017, the Clinical Competency Committee ("CCC"), which included Bader, completed Garg's Milestone Evaluation as required by the ACGME, and that Garg had not yet come to the end of his academic year. Denied that Garg complained about discrimination. Denied that for other residents, Milestone

6

Evaluations are typically done in mid to late June. The Milestone Evaluations are only required to be done "twice per year." Supplemental Saunders Dec., Ex. 114 (Bader Dep. Tr.) at 66:3-9.

35. Denied. Garg's evaluations were consistently negative before and after his May 12, 2017 email. *See* ECF Doc. No. 84-7 at pp. 1-71 (Def. Exs. 35 and 35). Moreover, Bader issued Garg the Stage 2 warning for consistently deficient performance before Garg even sent the May 12, 2017 email. *See* ECF Doc. No. 84-8 at pp. 31-32 (Def. Ex. 63).

36. Denied except admitted only that Garg was on call from June 3rd to June 9th as was expected of all active PGY4 residents in the SVH program. *See* ECF Doc. No. 81 (SOF) at ¶¶ 143-149.

37. Denied. During Garg's June night float, he had a "disproportionately large number of report revisions for [his] PGY level" and that his reports required "significant revision time." *See* ECF Doc. No. 84-8 at p. 94 (Def. Ex. 86).

38. Denied. The testimony of Defendants' witnesses about their numerous meetings with Garg regarding his performance are supported by voluminous notes, emails and other documentary evidence. SOF at ¶ 50, 58-61, 65-66, 68-69, 71, 73, 77, 82, 89. Garg's bizarre refusal to acknowledge that these meetings took place is undercut by his own statements and behavior. He signed the Stage One written warning that summarized the meetings that occurred before February 2017 without objection and did not say that they had not occurred. *See* ECF Doc. No. 84-7 at pp. 97-90 (Def. Ex. 42). In his November 11, 2016 reply email to Bader following Bader's meeting with him on November 9, 2016, Garg did not dispute the meeting, or that Bader had asked other attendings to review cases with him, or how Bader described it as an "educational opportunity." Supplemental

Saunders Dec., Ex. 116.

39. Denied. *See* paragraph 38 above, and ECF Doc. No. 81 (SOF) at ¶¶ 45, 51-52, 59-61.

40. Denied. The feedback given to Garg to increase the speed and volume of his interpretations, as well as the clarity and quality of his reports, was not contradictory, it reflected the evidence that multiple different evaluators had trouble with the slowness and vagueness of his reports. *See* ECF Doc. No. 81 (SOF) at ¶¶ 77, 83, 96.

41. Denied. *See* ECF Doc. No. 81 SOF at ¶¶ 50, 58-61, 65-66, 68-69, 71, 73, 77, 82, 89. SVH's expectations of Garg were clearly laid out in both the Stage 1 and Stage 2 warning letters. *See* ECF Doc. No. 84-7 at pp. 87-90 (Def. Ex. 42); ECF Doc. No. 84-8 at pp. 31-32 (Def. Ex. 63).

42. Denied. This is pure conjecture on Garg's part and is unsupported by the record evidence. *See* ECF Doc. No. 81 (SOF) at ¶¶ 79-98. Moreover, Garg's contract was only for the Resident Year, which ran until June 30, 2017, not a full year. *See* ECF Doc. No. 84-8 at pp. 104-117 (Def. Ex. 90).

43. Denied except admitted only that Bader notified Garg of his decision to terminate him from the program on June 21, 2017, approximately nine months after Garg began the program, after Garg's performance did not improve to the level of a PGY4 following two written warnings and numerous performance meetings. Again, Garg's contract was only for the Resident Year, which ran until June 30, 2017, not a full year. *See* ECF Doc. No. 84-8 at pp. 104-117 (Def. Ex. 90).

44. Denied. The reasons for Garg's termination were set forth in detail in the dismissal notice given to him, *see* ECF Doc. No. 84-8 at pp. 93-96 (Def. Ex. 86), *not* in the ACGME Summative Performance Evaluation Bader filled out four months after Garg's dismissal

from the program. As Bader explained in his Declaration, the Summative Performance Evaluation is an ACGME document and has nothing to do with SVH's evaluation of residents. *See* ECF Doc. No. 74 (Bader Dec.) at ¶¶ 145-147.

45. Denied that Bader "failed to allow" Garg to stay in the program for the full 12 months and that he did not offer him the opportunity to repeat his R3 year. *See* ECF Doc. No. 81 (SOF) at ¶¶ 114-116. The Resident Agreement was not for 12 months, but for the Resident Year running from June 2016 to June 2017. *See* ECF Doc. No. 84-8 at pp. 104-117 (Def. Ex. 90). Denied that Bader told Garg that he would provide no credit for any of the rotations over the nine months that Garg was a resident. *See* Supplemental Saunders Dec., Ex. 114 at 255:15-156:1.

46. Denied that Bader's decision to terminate Garg was contradicted by the fact that, after his termination, Bader indicated that he supported the continuation of Garg's radiology training. Bader said that he "support[s] Dr. Garg's decision to pursue additional radiology training," which is not a recommendation of performance only a personal statement of support. *See* ECF Doc. No. 101-2 (Pl. Ex. 21).

47. Denied. Garg's evaluations were consistently negative. *See* ECF Doc. No. 84-7 at pp. 1-71 (Def. Exs. 35 and 35). Indeed, Garg's evaluations were consistently negative across evaluators and timeframes, and even Berberian's relatively higher grades were not an outlier in context. *See* ECF Doc. No. 81 (SOF) at ¶¶ 74-76; ECF Doc. No. 75 (Berberian Dec.) at ¶¶ 3-4.

48. Denied. Tara Catanzano, M.D. ("Catanzano") only stated that faculty evaluations and scores in general are subjective and "theoretically" prone to bias, not that SVH's "entire evaluation process" was subjective. Any unfamiliarity by Mukai and Burd with the core

9

competencies is not "all the more concerning" as the core competencies are an ACGME framework that faculty members are not required to memorize in order to be an effective evaluator given SVH's comprehensive resident performance assessments. *See* ECF Doc. No. 81 (SOF) at ¶¶ 21-24.

49. Denied. Plaintiff improperly states the evidence in the record, which – in the correct context – directly contradicts his statement. The full sentence of the termination letter reads "For your recent Night Float. . . a tabulation shows a disproportionately large number of report revisions for your PGY level. <u>This issue has shown no improvement from your last warning which stated</u> 'While the number of significant misses has decreased significantly, the quality and clarity of a large number of reports remains unsatisfactory.'" *See* ECF Doc. No. 84-8 at pp. 93-96 (Def. Ex. 86).

50. Denied. There is not a direct relationship between Garg's ACGME Summative Evaluation prepared four months after his termination, his faculty evaluations, and the ACGME core competencies and therefore these various evaluations are not "contradicting." *See* ECF Doc. No. 81 (SOF) at ¶¶ 21-24.

51. Denied except admitted only that Catanzano said there was an "inconsistency" between the ACGME Milestone Evaluation and the Summative Performance Evaluation. Denied that either of these two separate ACGME documents were used by the SVH program to evaluate residents. *See* ECF Doc. No. 74 (Bader Dec.) at ¶¶ 26, 145-147. They were documents the SVH program completed because of the ACGME requirements. *Id*.

52. Denied except admitted that Garg disputed some of his negative evaluations.

53. Admitted.

54. Denied except admitted that Resident 5 was 16 years younger than Garg, received two

written warnings around the same time as Garg, and had various documented performance issues. Denied that Resident 5's performance did not improve following his Stage 2 written warning. Additionally, Resident 5 was a first year or PGY2 in the program and had a different level of standards to meet than Garg, a third year or PGY4. *See* ECF Doc. No. 81 (SOF) at ¶¶ 187-188. Garg's claims about Resident 5 having significant ongoing performance problems is complete conjecture on his part and is not supported by any evidence.

55. Admitted.

56. Denied. SVH did not violate any ACGME rules, as the ACGME concluded after its own investigation. *See* ECF Doc. No. 81 (SOF) at ¶¶ 121-128.

57. Admitted.

58. Denied. Bader stated at his deposition that he only spoke with OU when he was first deciding whether to hire Garg and he only discussed Garg's performance. *See* ECF Doc. No. 101-1 Bader Depo. at 87:12-88:11 (Pl. Ex. 2); Supplemental Saunders Dec., Ex. 115 at 10:6-11:20.

59. Denied. Not only was Bader unaware that Garg had previously complained of age discrimination at OU, but Garg never referenced age discrimination to Bader at SVH. *See* ECF Doc. No. 81 (SOF) at ¶¶ 170-171.

60. Denied. SVH fully followed the process outlined in the GME Manual. *See* ECF Doc. No. 84-8 at p. 179 (Def. Ex. 109). Bader's decision to eliminate Step One of the appeal process – which he did after discussing this with Garg – did not suggest that the process was a sham. On the contrary, Bader explained to Garg that Step One was an appeal to the Department Chief (Bader) and since Bader is both Program Director and Department

Chief, he had already reviewed Garg's appeals through the two warning stages and decision for dismissal. This decision was made to "expedite the appeal process for [Garg] as much as possible." *See* ECF Doc. No. 84-8 at p. 133 (Def. Ex. 96). Bader did not tell Garg "I will not let you do radiology. I make the final determination. I am not going to let you finish." This is contradicted by the multi-step appeals process involving a variety of SVH personnel at all levels and Bader's reference letter to Garg following Garg's termination where Bader "support[s] Dr. Garg's decision to pursue additional radiology training." *See* ECF Doc. No. 81 (SOF) at ¶¶ 102-113; ECF Doc. No. 101-2 (Pl. Ex. 21).

61. Denied. Bader does not recall asking Garg to leave the room, but he did meet briefly with the faculty review committee at the beginning of the hearing to be sure they understood the process. *See* ECF Doc. No. 81 (SOF) at ¶ 108. Bader's email to the committee before the meeting was not an attempt to influence the committee, Plaintiff's quote is part of a description of documents that Bader provided to the committee. *See* ECF Doc. No. 84-8 at pp. 135-136 (Def. Ex. 97). Garg's belief about undue influence is undercut by the declarations submitted by the members of the faculty review committee. *See* ECF Doc. No. 75 (Berberian Dec.) at ¶¶ 6-8; ECF Doc. No. 77 (Midkiff Dec.) at ¶¶ 4-6; ECF Doc. No. 78 (Vinagre Dec.) at ¶¶ 7-11; ECF Doc. No. 79 (Welch Dec.) at ¶¶ 9-11.

62. Admitted only that the GME Policies and Procedures Manual states that residents have "the right to attend and to submit to … committee meetings… whatever oral or written information and arguments the Resident… believes are relevant…." Denied that Bader forced Garg to leave the appeal meeting. To the contrary, Bader encouraged Garg to be present and give a presentation at the appeal meeting, even though he was not required to do so. *See* ECF Doc. No. 84-8 at pp. 135-135 (Def. Ex. 97). It is also undisputed that

Garg spoke to the faculty review committee. *See* ECF Doc. No. 81 (SOF) at ¶ 106.

63. Denied. *See* ECF Doc. No. 81 (SOF) at ¶¶ 192-193.

64. Denied except admitted only that Berberian acted on one occasion as a reference for Garg following his termination, in which he said merely that Garg had a surgical background and could interpret "basic" radiology. *See* ECF Doc. No. 101-2 (Pl. Ex. 24). This was not an endorsement of his skills or abilities as a radiologist.

65. Denied. *See* ECF Doc. No. 81 (SOF) at ¶¶ 190-191.

66. Denied. *See* ECF Doc. No. 81 (SOF) at ¶ 111; ECF Doc. No. 78 (Vinagre Dec.) at ¶¶ 6-10.

67. Denied except admitted only that Garg submitted an appeal letter at Stage 3 of the appeal process outlining his grievances.

68. Denied except admitted only that Yuka-Marie Vinagre, M.D. ("Vinagre") offered Garg the opportunity to repeat his PGY4 year at SVH and finish his PGY5 year in another program. Denied that Vinagre's offer was false or that he would be given no credit for his time.

69. Denied except admitted only that Garg did not accept this offer. Denied that PGY5 openings are exceedingly rare or that Garg would have no chance to graduate. *See* ECF Doc. No. 81 (SOF) at ¶¶ 114-120.

70. Denied except admitted only that the APDR records showed two advertised open PGY5 positions from Garg's termination to early 2022. Denied that these records are reflective of every position across the country, including unadvertised ones and ones advertised in different places, and that Garg did not have the opportunity to be slotted into a program at a different PGY level, as is regularly done. *See* ECF Doc. No. 81 (SOF) at ¶¶ 117-120.

71. Denied. *See* ECF Doc. No. 81 (SOF) at ¶ 116.

72. Denied. Bader and Vinagre's offer for Garg to repeat his PGY4 year was genuine, they discussed it at length, and Bader and Vinagre did not "give up quickly", they merely accepted Garg's decision to refuse the offer following this in depth discussion. *See* ECF Doc. No. 81 (SOF) at ¶ 116; ECF Doc. No. 78 (Vinagre Dec.) at ¶¶ 13-15.

73. Denied except admitted only that Garg submitted an appeal letter at Stage 4 of the appeal process outlining his grievances.

74. Denied. Bader and SVH's counsel did not have any improper meetings with Jeffrey Welch ("Welch"). Bader did not tell Garg to leave at the end of the meeting and or meet with Welch to discuss anything other than ensuring Welch had the necessary documents. *See* ECF Doc. No. 81 (SOF) at ¶ 113; ECF Doc. No. 79 (Welch Dec.) at ¶¶ 7-9. SVH's counsel did not help Bader by continuously providing written comments to him. Garg's attorney was not barred from attending the Stage 4 appeal meeting.

75. Denied. SVH did not prevent Garg's attorney from attending the Stage 4 appeal meeting. The reason he did not attend is that he was unable to attend. *See* ECF Doc. No. 84-8 at p. 142 (Def. Ex. 99)("Dr. Garg requested that his attorney, Mr. Flam, be present, however, he was unable to attend.")

76. Denied except admitted only that Garg's termination was upheld through each step of the four stage appeal process at SVH. Denied that Bader worked to undermine Garg's success at the appeal stage behind the scenes and that Garg did not receive an impartial, independent decision at each stage, reached without any interference or improper attempts to influence by Bader. *See* ECF Doc. No. 79 (Welch Dec.) at ¶¶ 10-12; ECF Doc. No. 78 (Vinagre Dec.) at ¶¶ 10-12; ECF Doc. No. 75 (Berberian Dec.) at ¶¶ 6-8;

ECF Doc. No. 77 (Midkiff Dec.) at ¶¶ 4-6; ECF Doc. No. 74 (Bader Dec.) at ¶¶ 80-82.

77. Denied except admitted that Garg filed a complaint with the MCAD.

78. Denied except admitted only that Garg attached his documented grievances to his MCAD complaint.

79. Denied that Garg's rebuttal statement explicitly states that he was retaliated against. The rebuttal mentions in the middle of the statement, with no clarity, that the program "falsified the basis for termination with the intention to get retaliate [sic] against Dr. Garg." *See* ECF Doc. No. 84-6 pp. 5-12 (Def. Ex. 22). The rebuttal statement later references, as part of a long string of actions, "the retaliatory removal of Dr. Garg from his Fluoroscopy rotation." *Id*. Neither of these uses are an explicit statement of retaliation.

80. Denied except admitted only that Garg's MCAD complaint was requested to be dismissed and then a Superior Court complaint was filed on Garg's behalf the next day. Defendants lack sufficient knowledge to admit or deny Garg's privileged communications with his counsel.

81. Denied except admitted only that Garg's MCAD complaint was requested to be reinstated and that his Superior Court complaint was dismissed. Defendants lack sufficient knowledge to admit or deny Garg's privileged communications with his counsel.

82. Denied. Defendants lack sufficient knowledge to admit or deny Garg's privileged communications with his counsel.

83. Denied. Garg was on notice of the 90-day filing requirement. *See* ECF Doc. No. 81 (SOF) at ¶¶ 196-204.

84. Denied. Garg has offered no evidence other than his own testimony about his addresses,

or when and where he moved, such as mail forwarding notices, rental agreements, purchase and sale agreements, etc.

85. Denied. Defendants lack sufficient knowledge to admit or deny Garg's privileged communications with his counsel. However, Garg did receive communications from the MCAD notifying him of his rights and obligations and he was on notice of the 90-day filing requirement. *See* ECF Doc. No. 81 (SOF) at ¶¶ 196-204.

86. Denied except admitted only that Garg intended to sit for the ABR's Core Exam, a requirement for certification in diagnostic radiology. Garg's statement that he had a "contract" is an improper legal conclusion and not a factual allegation.

87. Denied except admitted only that 36 months of training was one of the requirements to sit for the Core Exam and that Garg's employment for SVH was terminated on August 9, 2017.

88. Denied except admitted only that Bader fulfilled his requirement as Program Director at SVH to notify the ABR when a resident is no longer active in their program and he notified the ABR that Garg had been dismissed from SVH's program. SOF at ¶ 195.

89. Denied except admitted only that the ABR canceled Garg's registration for the Core Exam.

90. Denied except admitted that Garg had a match agreement with NYU. Garg's claim that it was "final and binding" is an improper legal conclusion and not a factual allegation.

91. Denied except admitted only that Garg was required to finish his PGY5 residency and graduate to be eligible for his NYU fellowship and that SVH terminated him. Garg could have repeated his PGY4 year at SVH, as offered, and then graduated from another program. That would have allowed him to participate in the NYU program.

92. Denied except admitted only that Garg became ineligible for the NYU fellowship and that he requested a waiver of his NRMP agreement to participate, which was approved.

                                          Respectfully submitted,

                                          DEFENDANTS VHS ACQUISITION SUBSIDIARY NO. 7, INC. d/b/a SAINT VINCENT HOSPITAL, DAVID A. BADER, M.D., F.A.C.R., JOHN K. MUKAI, M.D., and DOUGLAS A. BURD, M.D.,,

                                          By their attorneys,

                                          */s/ Diane M. Saunders*
Diane M. Saunders, Esq. (BBO# 562872)
diane.saunders@ogletreedeakins.com
Olivia L. Vehslage (BBO #705961)
olivia.vehslage@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Tel:  617-994-5700
Fax: 617-994-5701

Dated: December 21, 2022

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2022 a true copy of the above document was filed through the Court's electronic filing system and served via electronic mail upon counsel of record in this matter.

                                    */s/ Diane M. Saunders*
                                    Diane M. Saunders